417 A.2d 229

**COMMONWEALTH of Pennsylvania**

v.

**John Joseph PALMER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1979.

Filed Dec. 21, 1979.

Jerold S. Berschler, Philadelphia, for appellant.

John T. Salvucci, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and ROBERTS and LIPEZ, JJ.*

CERCONE, President Judge:

On May 20, 1977, a jury convicted appellant of murder of the first degree. After denial of post-verdict motions, the trial court sentenced appellant to life imprisonment. Appellant contends that (1) the trial court erred in denying his motion for change of venue; (2) police obtained from him an inculpatory statement in violation of Pa.R.Crim.P. 130 and *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972); (3) the trial court erred in denying his request for a continuance before the preliminary hearing; (4) the trial court erred in allowing admission of prejudicial testimony; (5) the trial court did not adequately instruct the jury on the theory of diminished capacity; and (6) a psychiatric examination of appellant conducted without presence of counsel denied him his right to counsel. We affirm.

About 1:00 A.M. on January 4, 1977, appellant, a police officer in the Upper Moreland Police Department in Montgomery County, shot and killed a victim, a female, in the parking lot of a church. When a local resident discovered the body in the morning, he called police. Appellant was the first officer to respond to the call. While appellant guarded the parking lot, other officers examined the body, uncovering beneath one of the legs a name tag bearing appellant's name. When questioned later at the police station, appellant admitted killing the victim.

Appellant argues that the trial court erred in denying his motion for change of venue. Pretrial publicity will be deemed so inherently prejudicial as to require a change of venue only if the articles appearing were either sensational, inflammatory and slanted towards conviction, rather than factual and objective; revealed that the accused had a criminal record; referred to a confession, admissions or reenactments of the crime by the accused; or derived from

* Justice Samuel J. Roberts of the Supreme Court of Pennsylvania, is sitting by designation.

reports from the police and prosecuting officers. Even if one or more of these elements exists, a change of venue is required only if the publicity has been so extensive, sustained and pervasive, without sufficient time between publication and trial for the prejudice to dissipate, that "the community must be deemed to have been saturated with it." *Commonwealth v. Casper*, 481 Pa. 143, 153, 392 A.2d 287, 292–293 (1978); *Commonwealth v. Kivlin*, 267 Pa.Super. 270, 406 A.2d 799 (1979).

■ The newspaper reports contained in the record do not meet this standard. In his motion, appellant submitted 66 newspaper reports appearing between the time of the killing on January 4, 1977 and the time of the preliminary hearing on April 15, 1977. Some of the articles did mention that appellant had allegedly confessed, and it is likely that this information, not available to the general public, derived from police or Commonwealth sources. The Commonwealth, however, never confirmed the news reports and the text of the inculpatory statement appellant had given police never appeared in the newspapers. Moreover, many of these articles appeared in Philadelphia newspapers and the rest in various publications serving different parts of Montgomery County. All the reports were factual and dispassionate. Some of the reports were interviews with appellant's trial counsel. Most of the articles appeared before the end of February and the few appearing later were published at the time of the preliminary hearing.

Further, the post-verdict court noted that Montgomery County has a population of about 700,000, that the crime was of special interest only in the township in which it occurred, and that, because the County borders on Philadelphia County, the people of the County frequently hear of murders and would not pay particular attention to the killing for which appellant was tried. At voir dire, the veniremen were carefully questioned for bias arising from publicity about the case. A few expressed doubt about their ability to form an impartial opinion based on the evidence presented at trial and they were dismissed. Appellant did not use all his

peremptory challenges during this voir dire. Finally, the trial court sequestered the jurors throughout the trial.

Thus, the publicity primarily occurred several months before trial, the articles were factual, not emotional, the jurors were not constantly exposed to prejudicial information and appellant was tried by a panel of jurors who were isolated during trial, and who had stated, to his satisfaction, that they would render a fair and impartial verdict. In these circumstances, we conclude that the trial court correctly denied appellant's motion for change of venue. See *Commonwealth v. Casper*, supra; *Commonwealth v. Hoss*, 445 Pa. 98, 283 A.2d 58 (1971); *Commonwealth v. Kivlin*, supra; *Commonwealth v. Frazier*, 269 Pa.Super. 527, 410 A.2d 826 (1979).

■ Appellant contends that his inculpatory statement was the product of unnecessary delay between arrest and arraignment in violation of Pa.R.Crim.P. 130 and *Commonwealth v. Futch*, supra. When appellant returned to the police station about 7:00 A.M., Deputy Chief of Montgomery Detectives Oscar Vance called him to his office to report as the first officer at the scene of the crime. Apparently, Vance suspected appellant of involvement in the crime because he informed appellant of his constitutional rights. The questioning lasted about 2½ hours, during which appellant's connection to the crime appeared more clearly. About 9:30, confronted with the fact that his name tag had been found under the victim's body and with other evidence of his involvement, appellant admitted killing the victim and began to make a statement, later introduced at trial. He remained in custody until shortly after 2:00 P.M., when he was arraigned about 7½ hours after his questioning began. Even assuming that appellant was arrested at 7:00 A.M., we conclude that the statement was not a product of the delay, of which only 2½ hours involved interrogation and some was used for administrative processing. See *Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173 (1979).[1]

1. Appellant was arrested before May 16, 1977, the effective date of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977),

190

■ Appellant asserts that the trial court erred in denying his request for a continuance before the preliminary hearing. Appellant argues that he had retained counsel only two days before the hearing and that counsel needed more time to prepare. Counsel thoroughly tested the Commonwealth's prima facie case at the preliminary hearing. Indeed, appellant fails to specify any action counsel failed to take or other harm resulting from the denial of his request. In view of the absence of any asserted harm, appellant's argument that counsel was unable to perform competently because of insufficient time to prepare is without merit. See *Commonwealth v. Woody*, 440 Pa. 569, 271 A.2d 477 (1970); *Commonwealth v. Nero*, 250 Pa.Super. 17, 378 A.2d 430 (1977) (allocatur refused).

■ Appellant argues that the trial court erred in allowing admission of certain testimony. Linda Cox, who lived less than 100 yards from the parking lot, testified that at about 1:00 A.M. on January 4, 1977, she heard sobbing, then a cry and a bang. She thought that the sobbing and the cry sounded like the voice of a female and the bang sounded like a firecracker, but, on cross-examination, admitted that she was not sure what the sounds were. Appellant objected that the testimony lacked sufficient certainty for admission. According to appellant, the testimony was prejudicial because, from the evidence that some seconds passed between the victim's alleged cry and the fatal shot, the jury could have determined that he acted with specific intent and premeditation.

Whether the sobbing and the cry were those of a female was for the jury to determine. Cox testified only that the noises sounded like those of a female. Cox was attempting to describe the quality of the sounds she had heard. She also said that the noises sounded like some an animal might make. As a witness describing an intangible fact, a cry in

which held inadmissible any statement obtained after arrest and before arraignment where the accused is not arraigned within 6 hours of arrest. See *Commonwealth v. Van Cliff*, 483 Pa. 576, 587 n.8, 397 A.2d 1173, 1179 n.8 (1979).

the night, Cox could liken the sound to one which people commonly hear and recognize, for this reference aided the jury in understanding what she had heard. See J. McCormick, Handbook of the Law of Evidence § 11 at 22, infra (2d ed. Cleary). Her uncertainties, which appellant had opportunity to bring out on cross-examination, bore on the weight to be accorded her testimony, not its admissibility. The testimony was not inflammatory and did not permit the jurors to draw inferences not fairly arising from the evidence. See *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973). Thus, the testimony was admissible.

■ Appellant argues that the trial court did not adequately instruct the jurors on the concept of diminished capacity. At trial, appellant presented a neurologist, a psychologist and a psychiatrist who testified that, because of mental disorders, he lacked the capacity to form specific intent and to premeditate. The trial court instructed the jurors on expert testimony, informed them of the elements of murder of the first degree, including intent, and stated that the Commonwealth had the burden of proving beyond a reasonable doubt all the elements of the crime. The court then explained the concept of diminished capacity, quoting from *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976). Appellant objected to the instruction on diminished capacity. Later, the jurors requested the court to repeat the legal definition of diminished capacity. The court restated the definition and asked if appellant was satisfied with the definition. Appellant stated that he was. Because appellant acquiesced in the court's instruction, he may not now complain of it. Cf. *Commonwealth v. Brightwell*, 479 Pa. 541, 388 A.2d 1063 (1978) (counsel acquiesced in recording of verdict).

■ Finally, appellant argues that he was denied his right to counsel because, while in police custody and without counsel, he was required to undergo certain psychological tests which, in part, formed the basis of the testimony of a Commonwealth psychiatrist. Appellant did not brief this issue before the post-verdict court and the court did not

**192**

consider it. Thus, it is not preserved for review. See *Commonwealth v. Carrillo*, 483 Pa. 215, 395 A.2d 570 (1978); *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978).

Judgment of sentence affirmed.