460 A.2d 784

COMMONWEALTH of Pennsylvania

v.

Robert Kelsey HUBBLE, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 18, 1982.

Filed April 29, 1983.

Petition for Allowance of Appeal Denied Oct. 12, 1983.

Carl E. Barlett, Williamsport, for appellant.

Kenneth D. Brown, District Attorney, Williamsport, for Commonwealth, appellee.

Before WIEAND, BECK and MONTEMURO, JJ.

WIEAND, Judge:

On August 5, 1976, Mrs. Claire Kepner and her two small children were found murdered in their home near Muncy in Lycoming County. All had been shot with a .32 caliber gun, and the abdomen of one child had been repeatedly slashed with a knife. Robert Hubble was tried jointly with Milton Scarborough[1] and was found guilty of burglary,[2] robbery,[3] theft,[4] conspiracy[5] and three counts of murder in the first degree.[6] On direct appeal from judgments of sentence imposed after post verdict motions had been denied, Hubble asks that we review and find error in the trial court's refusal to grant his request for a trial continuance and various evidentiary rulings made during trial. He also contends that the trial court erred by denying a motion for new trial on the grounds of after-discovered and recanting testimony. Our review discloses neither error nor valid reason for setting aside the verdict of the jury. Therefore, we affirm the judgment of sentence.

The evidence showed that on the evening of the killings, Robert Hubble, his brother, David, Milton Scarborough, and John Shafer, together with Colin Brown and some others, had gathered at Ricky Snyder's "shack" in rural Lycoming County. Scarborough, Shafer and the Hubble brothers obtained ten dollars from Colin Brown and left in David Hubble's[7] car to buy some beer. They purchased a case of beer at a bar in Muncy and rode around the countryside, drinking beer. During the course of their ride, appellant

1. Milton Scarborough was convicted of robbery, burglary, theft, conspiracy and three counts of murder in the third degree.

2. 18 Pa.C.S. § 3502(a).

3. 18 Pa.C.S. § 3701(a).

4. 18 Pa.C.S. § 3921(a).

5. 18 Pa.C.S. § 903(a).

6. 18 Pa.C.S. §§ 2501, 2502(a).

7. The Commonwealth's evidence showed that the car was registered in the name of Hubble's mother, Mary Ranck.

suggested "hitting a place" and randomly selected a residence where he instructed Scarborough, who was driving, to pull into the driveway. Scarborough and the Hubble brothers got out of the car, leaving Shafer behind as lookout, and entered the dwelling where Claire Kepner lived with her children. After they had returned and driven away, according to Shafer's testimony,[8] appellant handed a pistol to his brother and told him to put it in the glove compartment. They purchased additional beer with money taken from the Kepner home and returned to the "shack." There, David Hubble made various statements, heard by Snyder, Brown and Shafer, in which he recounted the killing of Mrs. Kepner and her children. He said that it had been necessary to kill them in order to get their money. He also made reference to playing "tic-tac-toe" on the stomach of one of the children.[9] Appellant, who was present, heard his brother and told him to "shut the f_____ up." The following night, Shafer and Brown encountered David Hubble at the Step Inn in Montgomery, Lycoming County. David again referred to the Kepner "job." [10] Appellant, his brother, grabbed him and angrily told him: "Keep quiet or I'll kill you."

Appellant was arrested and taken into custody on July 13, 1977, following a lengthy investigation of the killings by police. Counsel was appointed for appellant on July 28, 1977. A change of venue was subsequently granted, and the case was transferred to Lebanon County for trial. On October 27, 1977, an order was entered granting pre-trial discovery, and a pre-trial conference was held on November 5, 1977. Trial was set for November 14, 1977. A motion

8. John Shafer entered pleas of guilty to burglary, robbery and conspiracy and testified as a Commonwealth witness against the other conspirators.

9. David Hubble was tried separately and convicted of burglary, robbery, theft, conspiracy and three counts of murder in the second degree.

10. John Shafer testified that he saw the Hubbles at the Step Inn the night after the killings. Colin Brown thought that the encounter took place two nights after the killings.

for continuance to permit additional investigation was denied, and trial commenced before the Honorable G. Thomas Gates on the day assigned.

A trial court has broad discretion in determining whether a continuance shall be granted. *Commonwealth v. Metzger*, 498 Pa. 678, 680–82, 450 A.2d 981, 983 (1982); *Commonwealth v. Wolfe*, 301 Pa.Super. 187, 192–93, 447 A.2d 305, 308 (1982); *Commonwealth v. Volk*, 298 Pa.Super. 294, 303, 444 A.2d 1182, 1186 (1982); *Commonwealth v. Kittrell*, 285 Pa.Super. 464, 467, 427 A.2d 1380, 1381 (1981); *Commonwealth v. Andrews*, 282 Pa.Super. 115, 123, 422 A.2d 855, 859 (1980). Absent a manifest abuse of discretion, which results in prejudice to the defendant, the trial court's decision will not be reversed on appeal. *Commonwealth v. Eackles*, 286 Pa.Super. 146, 152, 428 A.2d 614, 617 (1981); *Commonwealth v. Waters*, 276 Pa.Super. 584, 590–591, 419 A.2d 612, 615 (1980); *Commonwealth v. Palmer*, 273 Pa.Super. 184, 190, 417 A.2d 229, 232 (1979). See: *Commonwealth v. Wolfe, supra* 301 Pa.Super. at 192–93, 447 A.2d at 308.

Appellant's counsel had 3½ months to prepare for trial following his appointment. His investigation was supplemented by the efforts of counsel for appellant's accomplices, by local counsel in Lebanon County and by several private investigators. Although averring "real prejudice" by not being able to follow all "leads" or conduct pre-trial interrogation of all potential witnesses, appellant has been unable to identify specifically any evidence that was undiscovered or any other prejudice because of the denial of his motion for continuance. There was neither a witness that was unexamined nor a defense that remained unpresented. In the absence of specific prejudice, appellant contends that the longer period available to the Commonwealth for investigation and the greater manpower available to participate therein renders the denial of his motion inherently unfair. We reject this argument.

In *Commonwealth v. Eackles, supra,* the defendant had been charged with 38 counts of forgery and 31 counts of theft. A motion for continuance was denied and trial commenced 55 days after the defendant's arrest. In response to his complaint that a denial of his motion for continuance had resulted in too prompt a trial, this Court said:

"We perceive no valid reason for holding such preparation time inadequate per se.... Significantly, appellant has failed to specify in what manner he was unable to prepare his defense or what he could have done by way of preparation if given more time. In the absence of a showing of prejudice, therefore, we perceive no abuse of discretion and decline to reverse the trial court's denial of the defense motion for continuance."

*Id.* 286 Pa.Super. at 152, 428 A.2d at 617. See also: *Commonwealth v. Volk, supra; Commonwealth v. Palmer, supra; Commonwealth v. Waters, supra.* Despite the seriousness of the crimes with which appellant was charged, the absence of prejudice suggests most strongly that the denial of his motion for continuance was not an abuse of discretion.

 The trial court received evidence, over defense objections, of extra-judicial statements made by David Hubble on the evening of the killings and again on the following night. On both occasions, appellant responded by telling his brother emphatically to be quiet. The trial court permitted this evidence on grounds that the statements had been made during the continuance of the conspiracy. Appellant contends that this was error.

For purposes of this appeal, we find it unnecessary to determine whether the statements were admissible as statements made in furtherance of a conspiracy.[11] We must

11. To be admissible as a co-conspirator's statement, the statement must have been made during the continuance of the conspiracy and in furtherance of its criminal purpose. *Commonwealth v. Dreibelbis,* 493 Pa. 466, 475, 426 A.2d 1111, 1115 (1981); *Commonwealth v. Cocciolet-ti,* 493 Pa. 103, 111, 425 A.2d 387, 391 (1981); *Commonwealth v. Robinson,* 298 Pa.Super. 447, 451, 444 A.2d 1260, 1262 (1982); *Commonwealth v. Tumminello,* 292 Pa.Super. 381, 388, 437 A.2d 435, 439

affirm the trial court's ruling if there was any valid reason for receiving this evidence. See: *Commonwealth v. Walton*, 483 Pa. 588, 596, 397 A.2d 1179, 1183 (1979); *E.J. McAleer & Co., Inc. v. Iceland Products, Inc.*, 475 Pa. 610, 613 n. 4, 381 A.2d 441, 443 n. 4 (1977); *Commonwealth v. O'Donnell*, 472 Pa. 25, 27 n. 3, 370 A.2d 1209, 1209 n. 3 (1977); *Commonwealth v. Hines*, 461 Pa. 271, 273 n. 3, 336 A.2d 280, 282 n. 3 (1975); *Commonwealth v. Dancer*, 460 Pa. 95, 101 n. 5, 331 A.2d 435, 438 n. 5 (1975); *Commonwealth v. Wise*, 298 Pa.Super. 485, 492 n. 2, 444 A.2d 1287, 1290 n. 2 (1982).

■ We conclude, after having reviewed the record, that the statements of David Hubble were admissible against appellant as tacit admissions.[12] The rule of evidence applicable to tacit or implied admissions was set forth by our Supreme Court in *Commonwealth v. Bolish*, 381 Pa. 500, 113 A.2d 464 (1955), as follows:

"The rule of evidence is well established that, when a statement made in the presence and hearing of a person is incriminating in character and naturally calls for a denial but is not challenged or contradicted by the accused although he has opportunity and liberty to speak, the statement and the fact of his failure to deny it are admissible in evidence as an implied admission of the truth of the charges thus made. The justification of this rule is to be sought in the age-long experience of mankind that ordinarily an innocent person will spontaneously repel false accusations against him, and that a failure to do so is therefore some indication of guilt."

(1981). When the conspiracy has come to an end, statements made thereafter are not admissible. *Commonwealth v. Ransom,* 446 Pa. 457, 463, 288 A.2d 762, 764 (1972); *Commonwealth v. Ellsworth,* 421 Pa. 169, 186, 218 A.2d 249, 258 (1966); *Commonwealth v. Robinson, supra* 298 Pa.Super. at 451–452, 444 A.2d at 1262–1263. See: *Commonwealth v. Evans,* 489 Pa. 85, 413 A.2d 1025 (1980); *Commonwealth v. Cofer,* 257 Pa.Super. 528, 390 A.2d 1363 (1978).

**12.** Although the trial court received the extra-judicial statements of David Hubble as statements made in furtherance of a conspiracy, the court en banc, in refusing appellant's post verdict motion for new trial, held that the statements were admissible as tacit admissions.

*Id.*, 381 Pa. at 523, 113 A.2d at 476. See also: *Commonwealth v. Coccioletti*, 493 Pa. 103, 113–114, 425 A.2d 387, 392 (1981); *Commonwealth ex rel. Smith v. Rundle*, 423 Pa. 93, 98, 223 A.2d 88, 90 (1966). The tacit admission rule is circumscribed by Fifth Amendment guarantees against self-incrimination. *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A.2d 904 (1967). See: *Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 223 A.2d 296 (1966). However, this limitation is applicable only to admissions implied from silence while an accused is in the custody or presence of the police or other law enforcement personnel. It does not preclude the receipt of tacit admissions resulting from a failure to deny accusations made while the accused was not in custody and when no police were present. *Commonwealth v. Coccioletti, supra* 493 Pa. at 113–114, 425 A.2d at 392; *Commonwealth v. Schmidt*, 452 Pa. 185, 204–205, 299 A.2d 254, 265 (1973).

The statements by David Hubble were made in the presence of appellant at the "shack" on the same night of the killings and also on the following evening.[13] Neither David nor Robert was then in custody, and no police were present. Not only did appellant not deny his brother's incriminating statements, but he told him in no uncertain terms to be quiet. David Hubble's accusations and appellant's responses thereto constituted implied admissions by appellant, and the trial court did not err by receiving them in evidence.

Appellant argues also that he should have been awarded a new trial because of irrelevant testimony received from John Bickel, who testified that he had seen David Hubble with a knife during July, 1976, and from Chief of Police Wayne Farrar, who said he had taken David Hubble and his wife home from the Step Inn on August 8, 1976. Bickel's testimony was offered and received without

13. The statements on the following evening contained no details of the robbery or killings. The witnesses could not recall the words spoken but only that David Hubble had referred to it when appellant remonstrated with him.

objection. The admissibility of his testimony, therefore, has not been preserved for appellate review. *Commonwealth v. Berrios,* 495 Pa. 444, 453–454, 434 A.2d 1173, 1178 (1981); *Commonwealth v. Kuterbach,* 458 Pa. 318, 322, 326 A.2d 283, 283 (1974); *Commonwealth v. Raymond,* 412 Pa. 194, 202–203, 194 A.2d 150, 154 (1963), *cert. denied,* 377 U.S. 999, 84 S.Ct. 1930, 12 L.Ed.2d 1049 (1964); *Commonwealth v. Ransom,* 240 Pa.Super. 92, 95, 360 A.2d 721, 723 (1976); *Commonwealth v. Butler,* 232 Pa.Super. 283, 291, 331 A.2d 678, 682 (1974). For similar reasons, appellant cannot complain of the admission of Chief Farrar's brief testimony. Appellant objected only once during this witness' testimony. That objection, directed toward the witness' repeating a statement by David Hubble that he had been in a fight, was sustained. No other relief was requested. Under such circumstances, we need not consider the balance of the witness' testimony; nothing has been preserved for review. See: *Commonwealth v. Hill,* 479 Pa. 346, 388 A.2d 689 (1978); *Commonwealth v. Glenn,* 459 Pa. 545, 330 A.2d 535 (1974); *Commonwealth v. Hart,* 272 Pa.Super. 189, 414 A.2d 1071 (1979).

The admissibility of photographs during a trial is committed to the sound discretion of the trial court. In the absence of an abuse of that discretion, the trial court's rulings will not be disturbed. *Commonwealth v. McCutchen,* 499 Pa. 597, 603, 454 A.2d 547, 549 (1982); *Commonwealth v. Woodward,* 483 Pa. 1, 6, 394 A.2d 508, 511 (1978); *Commonwealth v. Petrakovich,* 459 Pa. 511, 521, 329 A.2d 844, 849 (1974); *Commonwealth v. Connors,* 311 Pa.Super. 553, 559, 458 A.2d 190, 193 (1983); *Commonwealth v. Kaster,* 300 Pa.Super. 174, 177–79, 446 A.2d 286, 288 (1982). There was no abuse of discretion in the instant case. The trial court received in evidence and permitted the jury to examine photographs of the interior and exterior of the Kepner home and of the car allegedly used by the killers. These photos were innocuous. None was inflammatory. None depicted the victims. All showed more clearly than

words the location of the crimes and the car allegedly used. Their admission did not require the grant of a new trial.

Almost two years after appellant had been found guilty, he filed a separate motion for new trial on the grounds of after-discovered evidence. Hearings were held on February 13 and 14, 1980 before the Honorable G. Thomas Gates and the Honorable John A. Walter;[14] on June 11, 1980, findings of fact were entered, and argument was ordered on all pending post verdict motions. All motions were subsequently denied.

The law applicable to after-discovered evidence has been stated in *Commonwealth v. Parker*, 494 Pa. 196, 431 A.2d 216 (1981), as follows:

> " 'After discovered evidence will warrant the granting of a new trial only if the evidence (1) was unavailable at the time of trial despite counsel's due diligence to obtain it, (2) is not merely cumulative or offered only to impeach credibility, and (3) is likely to compel a different result.' (Citations omitted). Furthermore, unless there has been a clear abuse of discretion, the trial court's denial of appellant's motion for a new trial based on after-discovered evidence will not be disturbed." (Citation omitted).

*Id.*, 494 Pa. at 199, 431 A.2d at 218. See also: *Commonwealth v. Hugney*, 491 Pa. 222, 229, 420 A.2d 422, 426 (1980); *Commonwealth v. Valderrama*, 479 Pa. 500, 505, 388 A.2d 1042, 1045 (1978); *Commonwealth v. Coleman*, 438 Pa. 373, 376–377, 264 A.2d 649, 651 (1970); *Commonwealth v. Johnson*, 291 Pa.Super. 566, 588, 436 A.2d 645, 657 (1981); *Commonwealth v. Borelli*, 288 Pa.Super. 319, 322, 431 A.2d 1067, 1069 (1981); *Commonwealth v. Crawford*, 285 Pa.Super. 169, 186, 427 A.2d 166, 175 (1981).

 Appellant's principal argument on appeal is that the post verdict court rejected the recanting testimony of Ricky Snyder. Recanting testimony is exceedingly unreliable, and it is the duty of a trial court to deny a new trial

**14.** Judge Walter had presided at a separate trial for David Hubble, who also filed a motion for new trial on grounds of after-discovered evidence.

where it is not satisfied that such testimony is true. An appellate court will not reverse an order denying a new trial on the basis of recanting testimony unless there has been an abuse of discretion. *Commonwealth v. Gaddy,* 492 Pa. 434, 438, 424 A.2d 1268, 1270 (1981); *Commonwealth v. Starks,* 484 Pa. 399, 412, 399 A.2d 353, 359 (1979) (plurality opinion); *Commonwealth v. Nelson,* 484 Pa. 11, 13, 398 A.2d 636, 637 (1979); *Commonwealth v. Lee,* 478 Pa. 70, 75, 385 A.2d 1317, 1320 (1978); *Commonwealth v. Sanabria,* 478 Pa. 22, 33, 385 A.2d 1292, 1297 (1978); *Commonwealth v. Coleman, supra,* 438 Pa. at 377, 264 A.2d at 651; *Commonwealth v. Bernstein,* 309 Pa.Super. 573, 577, 455 A.2d 1232, 1234 (1983); *Commonwealth v. Dohner,* 295 Pa.Super. 342, 347, 441 A.2d 1263, 1266 (1982) (plurality opinion).

Snyder testified at trial that he had overheard the statements made by David Hubble concerning the killings and the responses of the alleged accomplices. It was this testimony which he subsequently wished to recant. Brown and Shafer had heard the same statements; they did not recant. Brown said that he had been "brain-washed" by the police and, in February, 1980, did not have a recollection of the statements and responses to which he had testified. However, he did not say that his trial testimony had been false. Shafer did not recant. With respect to his trial testimony, appellant called prison inmates at the February, 1980 hearing to testify that Shafer had made statements in prison which were allegedly inconsistent with his trial testimony. The trial judge, who had the opportunity to see and hear these witnesses, found that their testimony did not warrant the grant of a new trial. He found Snyder's recanting testimony incredible and rejected it. He found that Brown had testified truthfully at trial and that Shafer's prison statements about the presence of other persons at the murder scene, which could be used only to attack the credibility of his trial testimony, had been fully explained and were not inconsistent with testimony given at trial. The trial judge also found incredible and rejected the testimony of Thomas Whitman, a convicted burglar who had

served time with Robert Hubble at Camp Hill and with David Hubble at Dallas, who said that a prisoner whom he had met at Camp Hill said he had been involved in the killings and that the Hubble brothers had had nothing to do with it. The trial judge explained fully his reasons for rejecting all of this testimony. Our review fails to disclose any abuse of the trial judge's discretion. See: *Commonwealth v. Parker, supra; Commonwealth v. Sanabria, supra; Commonwealth v. Coleman, supra.*

The judgment of sentence is affirmed.