515 A.2d 54

**COMMONWEALTH of Pennsylvania**

v.

**Sanford BERNSTEIN, Appellant.**

Superior Court of Pennsylvania.

Submitted June 21, 1985.

Filed Sept. 12, 1986.

John J. O'Brien, West Chester, for appellant.

James B. Martin, Assistant District Attorney, Allentown, for Commonwealth, appellee.

Before CAVANAUGH, CERCONE and HOFFMAN, JJ.*

CAVANAUGH, Judge:

Following a jury trial, appellant was convicted of solicitation to murder his wife. Part of the Commonwealth's case was the testimony of James Coleman. James Coleman testified at trial that Sanford Bernstein made him an offer

* This case was originally submitted to a panel consisting of Judges Cavanaugh, Cercone and Lipez. A final determination was not reached before Judge Lipez retired on June 30, 1986. Thereafter, Judge Hoffman was appointed by President Judge Cirillo to replace Judge Lipez.

to kill Bernstein's wife. After Bernstein's conviction, Coleman proffered a recantation of his trial testimony asserting that appellant, Bernstein, was only kidding when he made him the offer to kill his wife. This recantation statement was obtained in the offices of appellant's Philadelphia attorney. Appellant included this in his post-trial motions. Post-trial motions were denied and appellant was sentenced to five to ten years incarceration along with a $25,000.00 fine. Bernstein appealed the denial of his post-trial motions and judgment of sentence. This court vacated the judgment of sentence and remanded the matter for an evidentiary hearing to determine whether the recantation evidence warranted the grant of a new trial. *Commonwealth v. Bernstein*, 309 Pa.Super. 573, 455 A.2d 1232 (1983). After four evidentiary hearings, the lower court concluded that a new trial was not warranted as " ... Coleman testified that he did not wish to recant and that his testimony at trial was truthful." Accordingly, the lower court denied appellant's request for a new trial and reinstated his judgment of sentence. It is from the denial of appellant's request for a new trial and reinstatement of his sentence that appellant brings this appeal. Appellant's brief raises numerous issues on appeal. Appellant argues that his conviction should be reversed and dismissed, or in the alternative, that he be granted a new trial. He also argues that in the event that his convictions are not dismissed by this court, that we remand the matter for a sentencing hearing. We affirm the lower court's order and reinstatement of his judgment of sentence.

We first note our standard of review. Recantation testimony is considered extremely unreliable. The trial court should deny a new trial unless satisfied that the testimony is true. As an appellate court, we may not disturb the trial court's decision unless there has been a clear abuse of discretion as it is the trial court's responsibility to determine the credibility of the recantation. *Commonwealth v. Gaddy*, 492 Pa. 434, 424 A.2d 1268 (1981); *Commonwealth v. Nelson*, 484 Pa. 11, 398 A.2d 636 (1979).

Appellant's first argument alleges that his conviction is unconstitutional as it was procured in violation of the due process clause, the equal protection clause and the Bill of Rights. More specifically, he argues that the lower court failed to resolve the issue of the credibility of Coleman's recantation and whether it warranted a new trial. We are unpersuaded by this assertion.

A review of the record reveals that the lower court conducted four evidentiary hearings in resolving the issue of Coleman's credibility. The first evidentiary hearing was adjourned by the court, on its own motion, as the court realized it was without jurisdiction at that time to hold the hearing. Appellant had a petition for allowance of appeal before the Supreme Court of Pennsylvania pending at the time of the first hearing. Therefore, the court adjourned the hearing pending the Supreme Court's disposition of the petition. However, we note that prior to adjourning the hearing, Coleman was called to the stand where he stated, "on the advice of my attorney, I plead the Fifth." The court allowed him to plead the Fifth Amendment except with respect to whether the district attorney's office had threatened him with prosecution for perjury if he testified at the hearing. Coleman replied, "it depends what you constitute [sic] as a threat." However, he also stated that the warning not to testify, in light of a potential perjury prosecution, may have come from his own attorney. Thus, the hearing ended prematurely with Coleman indicating that he was not willing to testify and would not affirm the truth of his recant.

The second hearing was held a few months later. It was learned at the beginning of the second hearing that, between the first and second hearing, Coleman had contacted the district attorney's office to "clear this whole mess up." There, after receiving a promise from the prosecutor that he would not be subject to prosecution if he testified truthfully, he swore to the truthfulness of his original trial testimony. He also revealed at great length the reason for his recant in Philadelphia. In a ninety-five page statement,

Coleman detailed how he met with Bernstein on several occasions following his conviction and was eventually persuaded, with a bribe, to recant his trial testimony. This statement was offered into evidence and became part of the record. While the issue of the credibility of Coleman's recant appeared to have been resolved—Coleman himself denying its truthfulness—the court ordered another hearing to give appellant's counsel an opportunity to rebut Coleman's assertions in the ninety-five page statement. Appellant was absent at the third evidentiary hearing, as he had been absent at the first two, because of health problems. Appellant's counsel called three witnesses attempting to challenge Coleman's assertions. In the fourth hearing, appellant also being absent, appellant's counsel called two witnesses to rebut Coleman's denial of his recant and affirmation of his trial testimony. Following the testimony of appellant's witnesses, and arguments from both parties, the court concluded:

We have a case that has been remanded to us by the Superior Court not for the purpose of retrying a jury trial, but to the narrow purpose of hearing the testimony of a witness and determining the credibility of that witness' testimony for the purpose of deciding whether or not a new trial should be granted to the defendant's petition. That is the extent of our authority to act as described by the Superior Court.

It is now at least clear to the Court that as the Court indicated in its remarks on the record at a prior time, that the witness taking the Fifth Amendment made the issues very clear because there was no recantation for the Court to consider and, therefore, there is no reason to proceed beyond that. The Court is now convinced that in spite of the fact that immunity has been granted to Mr. Coleman, the issue is equally as clear because once immunity was granted the witness testified in substance that he is not recanting, that he is affirming his testimony and again, there is no issue then of credibility with respect to any recantation. The issue before the Court revolves around

the petitioner's obligation to present to the Court testimony to show that there is a credible recantation in order for the Court to consider whether or not a new trial can be granted.

. . . .

We are satisfied that in the context of these proceedings where the witness has testified that he is not recanting and that he is affirming his testimony, that the petitioner has not sustained his burden with respect to his motion for new trial and that motion must be dismissed. The Superior Court also said that after the evidentiary hearing if the Court is satisfied that the motion for new trial is not granted, then the bail should be forfeited immediately or terminated immediately is the word of the Superior Court and, of course, that would result in the defendant being remanded to complete the remainder of his term.

This Court being satisfied that there has not been a showing that a new trial should be granted, and having denied the motion of the petitioner/defendant, reinstates the sentence of the Court.

■ We believe that the record speaks very clearly as to whether the lower court complied with the Superior Court's mandate. In its attempt to provide a full opportunity to be heard the lower court held four hearings. As has been stated often, "Recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true." *Commonwealth v. Mosteller*, 446 Pa. 83, 284 A.2d 786 (1971), *quoting Commonwealth v. Scull*, 200 Pa.Super. 122, 186 A.2d 854 (1962). Accordingly, after Coleman pled the fifth amendment at the first hearing, and certainly after he denied his recant and reaffirmed his trial testimony at the second hearing, the issue as to the credibility of the recant was resolved. There was no issue as to its credibility as Coleman was either unwilling to affirm it, or had *expressly* denied it. Accordingly, we believe the trial court adequate-

ly complied with the court's mandate to resolve the issue of the credibility of the recanting witness. Appellant also strenuously argues that the prosecutor acted improperly by taking a statement from Coleman between the first and second hearing. He argues that the prosecutor " ... intentionally and deliberately misused the witness immunity power ... to influence and manipulate the testimony of the recanting witness, Jimmy H. Coleman." We are unpersuaded by appellant's argument.

■ First of all, we see no impropriety with the prosecutor taking a statement from a witness who has approached him. It was Coleman who contacted the prosecutor to "clear this whole mess up." Furthermore, Coleman had been a witness for the Commonwealth throughout these proceedings as he was under a Commonwealth subpoena to appear at the remand hearing. There is nothing to suggest that access to the witness by the defendant's attorney or other representative was improperly impeded by the Commonwealth.

■ Nor do we find any impropriety with the prosecutor's promise not to prosecute made in the District Attorney's office when Coleman gave his statement. We believe the prosecutor's commitment to Coleman was a legitimate act within his discretion as a prosecutor.

A prosecutor's decision not to prosecute an individual, and his ability to make such a promise to an individual, is an essential and vital part of our criminal justice system. We recently stated that:

> ... whether to charge a person with criminal offense depends upon the exercise of prosecutorial discretion. This discretionary power of the district attorney in determining whether prosecution shall be commenced or maintained may well depend on matters of policy wholly separate and apart from the existence of probable cause. For this reason, the courts have been wary of interfering with or attempting to supervise the district attorney in

the exercise of his discretion in controlling criminal prosecutions.

*In Re: Wood,* 333 Pa.Super. 597 at 602, 482 A.2d 1033 at 1036 (1984), *quoting U.S. v. Cox,* 342 F.2d 167 at 171 (5th Cir.1965), *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

We have further held that a court should not interfere with the exercise of prosecutorial discretion unless there has been a gross abuse of discretion. *Commonwealth v. Eisemann,* 276 Pa.Super. 543, 419 A.2d 591 (1980). We have already clarified what constitutes a gross abuse of discretion. For example, in *Commonwealth v. Morris,* 267 Pa.Super. 379, 406 A.2d 1091 (1979), we quoted from *Shade v. Commonwealth of Pennsylvania, Department of Transportation,* 394 F.Supp. 1237 (1975) and stated:

> [W]hile there may be instances in which the courts would be entitled to review the exercise of prosecutorial discretion, such review is limited to circumstances involving the deliberate use of such factors as race, religion, or other suspect classifications.... In the absence of such factors, the exercise of prosecutorial discretion does not violate due process or equal protection of the law.
>
>     . . . .
>
> The criminal law is not a computerized system and discretion ... is a necessary and inherent part of the criminal justice system. Prosecutorial discretion in law enforcement 'is by its very nature exceedingly broad,' and such discretion is an essential part of the criminal justice system.

*Id.,* 267 Pa.Superior Ct. at 381–382, 406 A.2d at 1092.

In our view, the facts of this case clearly support judicial deference to the prosecutorial discretion recognized in *Shade, supra,* and *Eisemann, supra.* The prosecutor's decision (and corresponding commitment) not to prosecute was motivated by his desire to obtain truthful testimony from Coleman. The prosecutor's promise enabled Coleman to testify without fear of otherwise likely prosecution. Fur-

thermore, there is no evidence whatsoever that the prosecutor deliberately used a "suspect class" in his decision not to prosecute. We see no abuse of discretion and no basis to appellant's characterization of the prosecutor's actions as prosecutorial misconduct. Nor do we see any basis to his assertion that the prosecutor abused the immunity process. It is clear that a grant of immunity is a judicial function under 42 Pa.C.S.A. § 5947.[1] Under the statute, the prosecuting attorney requests the grant of immunity from the court, and the court issues the order, provided the prosecuting attorney determines that the testimony is necessary for the public interest or the witness refuses to testify for fear of self-incrimination. *See* 42 Pa.C.S.A. § 5947(a) and (b). Thus, while the prosecutor makes the judgment that a conferral of immunity is necessary, and petitions the court for the grant of immunity, only the court can issue the order. This is exactly what occurred at the second evidentiary hearing: the district attorney determined that Coleman would not testify for fear of self-incrimination; the district attorney then prepared a petition for the grant of immunity, and the court issued the order. Thus, while it is understandable that the appellant objected to the grant of immunity, especially in light of Coleman's reaffirmation of his trial testimony and denial of his recant, it was in no way improper under the statute. The prosecutor acted within his discretion and under his statutory authority when he made a promise to Coleman and petitioned the court for a grant of immunity. Therefore, we see no merit to appellant's argument.

1. 42 Pa.C.S.A. § 5947 states in pertinent part:
    § 5947. Immunity of witnesses
    (b) Request and issuance.—The Attorney General or a district attorney may request an immunity order from any judge of a designated court, and that judge shall issue such an order, when in the judgment of the Attorney General or district attorney:
       (1) the testimony or other information from a witness may be necessary to the public interest; and
       (2) a witness has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.
    42 Pa.C.S.A. § 5947(b).

■ Appellant also argues that Coleman's statement to the prosecutor was unduly influenced by the presence of two "intimidators" which further demonstrates the prosecutor's bad faith. These two intimidators were allegedly Mr. Heusinger and Mr. Padrone. Both individuals had been employed by Mrs. Bernstein as private security guards. Mr. Padrone was also a police officer in the Allentown area. Michael Holubowsky, a county detective, was also present during the statement. We believe this, like many other issues appellant raises, was a matter of credibility to be determined by the trial judge. It is well established that it is not our function to substitute our judgment for that of the factfinder on factual matters, especially credibility, and accordingly, we will not do so except under the most egregious circumstances. *Commonwealth v. Willis*, 276 Pa.Super. 13, 419 A.2d 70 (1980). The trial judge is to judge credibility in hearings following recants. *See Commonwealth v. Gaddy, supra*. The trial judge was able to determine this issue. Furthermore, Coleman had an opportunity to testify outside the presence of the "intimidators" at the evidentiary hearing. Therefore, the "coercion" that allegedly took place in the prosecutor's office with the presence of the intimidators was not present in the courtroom. As we have already pointed out, Coleman affirmed the truth of the statement given in the prosecution's office in the evidentiary hearing. We find no abuse of discretion and, therefore, will not reverse the lower court on this issue. *Commonwealth v. Hubble*, 314 Pa.Super. 99, 460 A.2d 784 (1983).

■ Appellant's final argument challenges his sentence as illegal " ... in violation of almost every principle applicable to the concept of sentencing and sentencing procedures in the Commonwealth of Pennsylvania." After a thorough study of appellant's argument and the record, we are convinced that his claims are without merit. Also, we believe that the lower court properly reinstated appellant's judgment of sentence following its determination that a new trial was not warranted.

24

Accordingly, we affirm the trial court's order.

Order affirmed.