**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Ernest SIMMONS, Appellant.**

Superior Court of Pennsylvania.

Argued June 27, 2012.

Filed Nov. 30, 2012.

Thomas M. Dickey, Altoona, for appellant.

Scott M. Killy, Assistant District Attorney, Ebensburg, for Commonwealth, appellee.

BEFORE: OLSON, J., WECHT, J., and PLATT, J.*

OPINION BY PLATT, J.:

Appellant, Ernest Simmons, appeals from the judgment of sentence imposed following the revocation of his probation. Specifically, he challenges the trial court's determination that his expression of threats to kill Derek Henderson and feed him to the pigs constituted assaultive behavior because they were not communicated to the intended victim. We affirm.

Appellant was on probation after having been previously convicted of first-degree murder, and then, after a federal *habeas corpus* reversal, pleading *nolo contendere* to third-degree murder of an eighty-year-old woman. (*See Simmons v. Beard,* 356 F.Supp.2d 548, 549 (W.D.Pa.2005), *affirmed,* 590 F.3d 223 (3d Cir.2009), *cert. dismissed,* —— U.S. ——, 130 S.Ct. 1574, 176 L.Ed.2d 157 (2010)).

The trial court set forth the facts of Appellant's revocation as follows:

On April 29, 2010, [Appellant] signed a form outlining conditions governing special probation /parole, after being accepted for supervision by the Pennsylvania Board of Probation and Parole. Condition 5(c) of the form states: You shall: refrain from assaultive behavior.

On November 24, 2010, following a court hearing alleging (unrelated) violation of probation terms, th[e trial] court directed [Appellant] to serve a term of probation of ten years. The Order provided that in the event of any violation

* Retired Senior Judge assigned to the Superior Court.

of the terms and condition[s] of probation, he shall serve a six (6) months sentence in a state correctional institution. [The Commonwealth petitioned to clarify the sentence, and on November 24, 2010, the court entered an order stating that Appellant was sentenced to a ten-year period of probation and that, if he further violated probation, he would serve a six-month sentence.] Thereafter, [Appellant] was serving his probationary sentence at the Just For Jesus facility in Brookeville, Pennsylvania.

On January 10, 2011, Parole Agent Lonnie Miller filed a Notice of Charges alleging that [Appellant] had violated Condition 5(c). In support of the request for violation hearing, the Notice cited that on January 5, 2011, while seeking medical attention at the Dubois Regional Medical Center–West, [Appellant] threatened to cut up and feed a Mr. Derek Henderson to the pigs. Agent Miller also cited evidence that he and another agent viewed a text message with a similar meaning.[a]

[a] The [trial c]ourt subsequently excluded the actual text messages from evidence.

Following [a] violation hearing on January 20, 2011, and February 17, 2011, the [trial c]ourt determined that [Appellant] had violated the assaultive behavior condition, and sentenced him to serve a term of incarceration of six months to ten years in a state correctional institution. Direct appeal was filed, and [Appellant] submitted a statement of matters complained of on appeal. . . .

(Trial Court Opinion, 6/08/11, at 1–2).

Appellant raises three questions for our review:

1. Whether the court below erred in finding that the evidence sufficed to prove the violation of probation, *viz*, the general condition of refraining from as-

saultive behavior, inasmuch as the threats were not communicated to the object, nor was any action taken to implement the threats?

2. Whether the court below abused its discretion by *sua sponte* continuing the probation [violation] hearing for a limited purpose, *viz*, to present the testimony of the object of the Appellant's threatening language, alleged as assaultive behavior, or other witness to show direction and communication thereof to the object, and resumed such hearing with a witness outside of that purpose?

3. Whether the court below abused its discretion in imposing a sentence of total confinement on revocation of probation based on an inapplicable finding and without considering general standards, thereby rendering such sentence manifestly excessive?

(Appellant's Brief, at 5).

In his first issue, Appellant challenges the sufficiency of the evidence supporting the trial court's finding of a violation of the terms of his probation. (*See id.* at 14–18). Specifically, he asserts that the Commonwealth failed to prove by a preponderance of the evidence that he committed assaultive behavior "where there was no evidence either of action to implement the threats or of communication of the threats to the object[.]" (*Id.* at 14). We disagree.

Our review is guided by the following principles:

The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was man-

ifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

\* \* \*

■ When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison. In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation.

*Commonwealth v. Allshouse,* 33 A.3d 31, 37 (Pa.Super.2011), *appeal denied,* —— Pa. ——, 49 A.3d 441 (2012) (citations, quotation marks, and footnote omitted).

Preliminarily, we note that our sister court, the Commonwealth Court, has long recognized that "assaultive behavior" is broader than the crime of assault for purposes of revocation of parole:

> Although the Board's regulations require that parolees refrain from assaultive behavior, the regulations do not provide a definition of "assault." 37 Pa. Code § 63.4(5)(iii) (relating to general conditions of parole). However, th[e Commonwealth] Court recognizes "[a]ssaultive behavior encompasses a broader category of actions than would the crime of assault, and thus actions that would not constitute a crime may nonetheless be sufficient grounds for revocation of parole." *Jackson v. Pa. Bd. of Prob. & Parole,* 885 A.2d 598, 601 (Pa.Cmwlth. 2005).

> Moreover, in the context of parole violations, assaultive behavior is defined under the ordinary dictionary definition of assault. *Moore v. Pa. Bd. of Prob. & Parole* [95 Pa.Cmwlth. 531], 505 A.2d 1366 (Pa.Cmwlth.1986).... Th[e Com-

monwealth] Court has also reached such a conclusion in the absence of specific testimony that the victim was, in fact, in apprehension of bodily harm.... As pointed out by the Board ... th[e Commonwealth] Court deemed verbal threats assaultive behavior violative of parole condition 5(c) even when the target of the threat, just as in this case, did not receive the threat first hand.

*Malarik v. Pa. Bd. of Prob. & Parole,* 25 A.3d 468, 470 (Pa.Cmwlth.2011) (some citations omitted).[1] In the instant matter, we find the cases in the Commonwealth Court dealing with parole persuasive because the language of the relevant condition is the same in both parole and probation contexts. *See, e.g., Commonwealth v. Ballard,* 814 A.2d 1242, 1245 (Pa.Super.2003); *Commonwealth v. Green,* 405 Pa.Super. 24, 591 A.2d 1079, 1082 (1991), *cert. denied,* 503 U.S. 964, 112 S.Ct. 1571, 118 L.Ed.2d 215 (1992), *limited on other grounds by Commonwealth v. Alexander,* 436 Pa.Super. 335, 647 A.2d 935, 937 (1994).

In *Malarik,* the Commonwealth Court determined that "the threat posed by Malarik's letters to Judge Kwidis' life would place **any person** in reasonable apprehension of bodily harm and, therefore, the **drafting and distribution of said letters constituted assaultive behavior.**" *Malarik, supra* at 470 (emphasis added). Therefore, the Commonwealth Court relied on the act of expressing the threat, not its effect on the intended victim, to find that Malarik's behavior fell within the "broader category of actions" sufficient to warrant revocation of parole. *Id.; see also Jackson, supra* at 601; *Moore, supra* at 1367–68.

■ Here, the Commonwealth adduced testimony that Appellant made threats to

---

1. While decisions of the Commonwealth Court are not binding upon us, they may serve as persuasive authority. *See Common-* *wealth v. Ortega,* 995 A.2d 879, 885 (Pa.Super.2010), *appeal denied,* 610 Pa. 607, 20 A.3d 1211 (2011).

multiple parties that he was going to cut up Mr. Henderson, a romantic rival, and feed him to the pigs; that he would kill Mr. Henderson; and that "if he was going to go back to death row, he would make it worth his while." (N.T., 1/20/11, at 36; *see id.* at 22, 29). Appellant communicated these threats personally and by text message to his paramour, (*see* N.T., 2/17/11, at 8, 10), as well as personally and numerous times to at least four hospital personnel, (*see* N.T., 1/20/11, at 22, 29, 36–37).

■ Viewing the evidence in the light most favorable to the Commonwealth as verdict-winner together with all reasonable inferences under our standard of review, we conclude that the Commonwealth adduced sufficient evidence to prove by a preponderance of the evidence that Appellant violated the condition of refraining from assaultive behavior for purposes of revocation of probation. *See Allshouse, supra* at 37; *Jackson, supra* at 601.[2] Appellant's argument that the Commonwealth was required to prove implementation or direct communication of the threats to the intended victim, therefore, is without merit where it is the act of making the threat that constitutes assaultive behavior. *See Malarik, supra* at 470. Appellant's first issue does not merit relief.

In his second issue, Appellant asserts that "the court below abused its discretion by *sua sponte* continuing the probation violation hearing ... to present the testimony of the object of the Appellant's language ... and resumed such hearing with a witness outside of that purpose[.]" (Appellant's Brief, at 18). Appellant argues that he was prejudiced by this delay "because he was not detained on new charges but only awaiting the probation violation hearing." (*Id.* at 19). We disagree.

■ A trial court "may, in the interests of justice, grant a continuance, on its own motion, or on the motion of either party." Pa.R.Crim.P. 106(A). "A trial court has broad discretion in determining whether a continuance shall be granted. Absent a manifest abuse of discretion, which results in prejudice to the defendant, the trial court's decision will not be reversed on appeal." *Commonwealth v. Hubble,* 314 Pa.Super. 99, 460 A.2d 784, 787 (1983) (citations omitted). Furthermore, we note that:

> In evaluating the reasonableness of a delay, the court examines three factors: the length of the delay; the reasons for the delay; and the prejudice resulting to the defendant from the delay.
>
> The measure of delay extends from the defendant's date of conviction or entry of a guilty plea on the new charges to the date the court holds the revocation hearing.

*Commonwealth v. Christmas,* 995 A.2d 1259, 1263 (Pa.Super.2010), *appeal denied,* —— Pa. ——, 53 A.3d 756, 2012 Pa. Lexis 2161 (2012) (citations omitted).

Here, the Board petitioned for revocation on January 10, 2011, and hearings were held on January 20, 2011 and February 17, 2011, resulting in a lapse of thirty-eight days. The trial court continued the hearing to allow the Commonwealth to produce either Henderson, the target of Appellant's threats, or someone who could substantiate whether the threats were directly communicated to him. (*See* N.T., 1/20/11, at 46–48). At the continued hearing, the Commonwealth produced Melissa

---

**2.** Appellant relies heavily on *Jackson, supra,* in support of his argument that his conduct did not constitute assaultive behavior. (*See* Appellant's Brief, at 14, 15, 17, 18). However, the cases are readily distinguished on their facts. In *Jackson,* the Commonwealth Court found that the appellant's inappropriate hugging of a prison mental health coordinator, while unwelcome, was not assaultive behavior. *See Jackson, supra* at 602.

Brant, who testified that she received the threats but did not communicate them to Henderson. (*See* N.T., 2/17/11, at 8–9).

 Appellant simply alleges that he was prejudiced by being detained longer while awaiting the revocation hearing. (*See* Appellant's Brief, at 19). However, he cites no pertinent authority to substantiate this claim. (*See id.*); *see also* Pa. R.A.P. 2119(a). Therefore, Appellant's issue is waived. Moreover, the trial court acted within its discretion to continue Appellant's hearing *sua sponte*. *See* Pa. R.Crim.P. 106(A). Additionally, Appellant fails to demonstrate how he was prejudiced by Melissa Brant's testimony, which supported the testimony by hospital personnel, that Appellant made threatening statements that he would cut up Henderson and feed him to the pigs. (*See* N.T., 2/17/11, at 9).[3]

Accordingly, in light of the short duration of the delay and the lack of prejudice to Appellant, the trial court did not abuse its discretion by continuing Appellant's revocation hearing. *See Christmas, supra* at 1263. Appellant's second issue is waived and without merit.

In his third issue, Appellant asserts that the trial court "abused its discretion in imposing a sentence of total confinement on revocation of probation based on an inapplicable finding and without considering general standards, thereby rendering such sentence manifestly excessive[.]" (Appellant's Brief, at 21). We disagree.

 "A challenge to the discretionary aspects of sentence must be considered a petition for permission to appeal." *Commonwealth v. Hoch*, 936 A.2d 515, 518

(Pa.Super.2007). The Rules of Appellate Procedure mandate that, to obtain review of the discretionary aspects of a sentence, Appellant must include in his brief a Concise Statement of Reasons Relied Upon for Allowance of Appeal. *See* Pa.R.A.P. 2119(f). This statement must "raise a substantial question as to whether the trial judge, in imposing sentence, violated a specific provision of the Sentencing Code or contravened a 'fundamental norm' of the sentencing process." *Commonwealth v. Flowers*, 950 A.2d 330, 331 (Pa.Super.2008).

 Here, Appellant has included a Rule 2119(f) statement in his brief, in which he claims that his sentence was "manifestly excessive" because the trial court only considered whether Appellant violated his probation, thereby "depriving [Appellant] of an individualized sentence[.]" (Appellant's Brief, at 20). "A claim that a sentence is manifestly excessive such that it constitutes too severe a punishment raises a substantial question." *Commonwealth v. Kelly*, 33 A.3d 638, 640 (Pa.Super.2011) (citation omitted). Accordingly, we will review Appellant's claim.

 Our standard of review of an appeal from a sentence imposed following the revocation of probation is well-settled:

Our review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. 42 Pa. C.S.A. § 9771(b). Also, upon sentencing following a revocation of probation, the

---

**3.** Furthermore, Brant did not provide testimony that Henderson was aware of the threats as requested by the trial court in granting the continuance. (*See* N.T., 1/20/11, at 46–48). Even so, the Commonwealth was not required to prove that the threats were directly communicated to demonstrate that

Appellant violated the term prohibiting assaultive behavior. *See Malarik, supra* at 470. Therefore, Appellant was not prejudiced by a witness whose testimony was not dispositive in proving Appellant's assaultive behavior. *See Hubble, supra* at 787.

trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence.

*Commonwealth v. MacGregor,* 912 A.2d 315, 317 (Pa.Super.2006) (case citations omitted); *see also Allshouse, supra* at 37.

Here, Appellant originally negotiated a *nolo contendere* plea to third-degree murder with an underlying sentence of a term of incarceration of five to ten years, plus ten years' probation. (*See* Sentence, 12/31/09). Appellant acknowledged that he was subject to a maximum punishment of up to twenty years' incarceration. (*See Nolo Contendere* Explanation of Defendant's Rights, 12/31/09, at 1). After determining that Appellant violated the condition of probation that he refrain from assaultive behavior, the court revoked Appellant's probation, and sentenced him to a period of incarceration of six months to ten years. (*See* N.T., 2/17/11, at 25). Therefore, Appellant was sentenced within "the maximum sentence that [the court] could have imposed originally at the time of the probationary sentence." *MacGregor, supra* at 317.

■ Appellant's challenge to the discretionary aspects of his sentence fails to implicate the validity of the probation revocation proceedings or the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of his initial sentencing. *See id.* Accordingly, his allegations that the court abused its discretion by only considering whether Appellant violated his probation and that the court did not consider other relevant factors, thereby "depriving [Appellant] of an individualized sentence[,]" (Appellant's Brief, at 20), are without merit. We conclude that the trial court properly considered all of the relevant factors it was required to take into account in rendering the current sentence. Appellant's third issue does not merit relief.

Judgment of sentence affirmed.

WECHT, J., files a Dissenting Opinion.

### DISSENTING OPINION BY WECHT, J.

Ernest Simmons ["Appellant"] made threats against Derek Henderson ["Henderson"] that were never communicated to Henderson. Instead, the threats were voiced only to third parties while Appellant was in the hospital. The majority concludes that those threats, albeit unknown to Henderson, constituted assaultive behavior against Henderson which violated Appellant's probation.

Appellant's statements constituted repugnant behavior, not assaultive behavior. As a matter of law, Appellant could not lawfully be sentenced to prison for the former. I respectfully dissent.

In finding that Appellant's threats were assaultive behavior, the majority relies on a sparsely written and thinly reasoned decision of the Commonwealth Court: *Malarik v. Pa. Bd. of Probation & Parole,* 25 A.3d 468 (Pa.Cmwlth.2011). The majority cites *Malarik* for the proposition that an intended victim need not be aware of a threat for the speaker to be found in violation of probation for engaging in assaultive behavior. In *Malarik,* the appellant drafted and distributed letters that solicited funds to hire someone to kidnap and kill a judge. *Id.* at 469. The judge did not learn of the letters directly from Malarik. *Id.* at 470. The Commonwealth Court held that a threat can place a person in reasonable apprehension of bodily harm even if that threat is not communicated "first hand" to the intended victim. *Id.*

I disagree with the majority's reliance on *Malarik,* because that case's disposition is less than clear. The Commonwealth Court's use of the term "first hand" sug-

gests that, although Malarik did not make this threat directly to his intended victim, that intended victim did, at some point, become aware of the threat. This inference harmonizes *Malarik* with the Commonwealth Court's previous decision in *Jackson v. Pa. Bd. of Probation & Parole*, 885 A.2d 598, 601 (Pa.Cmwlth.2005), which had required "reasonable apprehension of bodily harm."

Unfortunately, the *Malarik* opinion fails to reveal how the judge became aware of the threats. The opinion stated that, "even without" the judge's testimony, it was clear that the threats would place any one in reasonable apprehension of bodily harm. The "even without" statement could mean that the judge testified, but that his testimony was not necessary to the determination that Malarik engaged in assaultive behavior. The "even without" language also could mean that the determination was being made without the judge having testified. The *Malarik* Court's sparse factual and procedural history, as well as the lack of clarity articulated in the bases for the court's determination in that case, undermines the Commonwealth's argument, and the majority's holding in this case, that *Malarik* stands for the proposition that the intended victim need not be aware of the threat.

In the instant case, Appellant threatened to kill Henderson. However, as the Commonwealth concedes, that threat was never communicated to Henderson. The Commonwealth stipulates that none of Appellant's threats were relayed to

Henderson by Brant, Wilson, Miller, or Henry. N.T., 2/17/11, at 4.[4] This distinguishes the case from the others that have interpreted assaultive behavior. For example, in *Moore v. Pa. Bd. of Probation & Parole*, 95 Pa.Cmwlth. 531, 505 A.2d 1366 (1986), the letters and phone calls threatening to slash, mutilate, and rape the victim were sent and made directly to the intended victim. Also, in *Dunkleberger v. Pa. Bd. of Probation & Parole*, 132 Pa. Cmwlth. 600, 573 A.2d 1173 (1990), the appellant made his threat to kill his former girlfriend if anything happened to their unborn baby directly to the former girlfriend. While *Malarik* presents a closer case, it appears that the intended victim there received the threat, albeit indirectly. By contrast, the record before us does not establish that Henderson had any knowledge whatsoever of the threat made against him. As a matter of law, and as a matter of common sense, a person cannot be placed in reasonable apprehension of bodily harm by a threat of which he or she is unaware.

While assaultive behavior encompasses more than criminal behavior, the intended victim must know of the threat before he or she can be placed in fear. To constitute assaultive behavior, that behavior must " 'clearly evoke[ ] a reasonable apprehension of bodily harm' *in the person assaulted.*" *Jackson*, 885 A.2d at 601 (quoting *Moore*, 505 A.2d at 1367) (emphasis added). This definition speaks to the intended victim, and not to the person making the statement. Otherwise, under the majori-

---

4. The Commonwealth asserts that Henderson was interviewed by a police detective. N.T., 2/17/11, at 4. The record does not tell us when any such interview occurred or what may have been communicated to Henderson by the detective who interviewed him. There is no evidence of record regarding the police interview. As Appellant was detained the day after he made the statements to Wilson, it can be presumed that Henderson was interviewed after Appellant already was in custody. Without testimony from Henderson or the officer who interviewed him, there is no record evidence allowing us to speculate that Henderson knew of the threat. The Commonwealth does not now argue that Henderson knew of the threat. Rather, the Commonwealth maintains that, based on *Malarik*, Henderson's knowledge is irrelevant.

ty's expansive interpretation, it would be a violation of probation (and a ticket to state prison) if a probationer, watching a Steelers game and upset with a call, stated that he was going to kill the referee. Surely, that cannot be what our law contemplates when it prohibits assaultive behavior.

Had the threat been communicated to Henderson, he may well have been placed in reasonable apprehension of bodily harm. But that did not happen here. The evidence was insufficient to demonstrate that Appellant violated his probation. Therefore, I dissent. Moreover, because I find the evidence insufficient to show that Appellant engaged in assaultive behavior, I would not reach his remaining issues on appeal.