J-S30024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMUEL JAMES GAISKI | : | |
| | : | |
| Appellant | : | No. 462 MDA 2021 |

Appeal from the Judgment of Sentence Entered March 24, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002022-2012

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED:  JANUARY 19, 2022**

Samuel James Gaiski (Appellant) appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following the revocation of his probation imposed pursuant to a 2012 no contest plea to aggravated assault of an unborn child.[1]  Appellant contends:  (1) the trial court erred in revoking his probation for his violation of a condition not properly imposed by the court; (2) the sentence imposed for a technical violation was excessive; and (3) the court abused its discretion when it imposed sex offender conditions as part of the revocation sentence.  While it is clear Appellant's prior eight-year term of incarceration for assault did not rehabilitate him, and both the trial court and Appellant's probation officer

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2606(a).

acted with the intention to protect future victims, we agree that the trial court revoked Appellant's probation for a condition it did not impose. Thus, we are constrained to reverse the order revoking his probation and vacate the judgment of sentence.

The facts underlying Appellant's 2012 arrest and conviction were summarized by the Commonwealth at a December 3, 2012, guilty plea hearing:

> [O]n January 16 and 17 of 2012, the victim in this case, [S.B.], was seven months pregnant with [Appellant's] child.
>
> On January 16, they did get into a physical altercation. As well as on January 17 there was another physical altercation where [Appellant] threw the victim up against the door, put both hands around her neck strangling her, he did push her around as well as striking her in the stomach with his knee.
>
> After the incident, the victim began to leak fluid from her vaginal area. She was taken to the hospital, was in the hospital for eight days. There was placental blood in her bloodstream that indicated there was trauma to the fetus. The placenta detached from her uterus.
>
> After being released from the hospital, [S.B.] was on bed rest for the remainder of her pregnancy. She did give birth to a son. He does have some medical issues which may or may not be related to the incident. There's not really any way to tell whether or not that is the case.

N.T., Guilty Plea & Sentencing H'rg, 12/3/12, at 4-5.

Appellant was charged with aggravated assault, aggravated assault of an unborn child, simple assault (two counts), unlawful restraint, false

imprisonment, and harassment.[2] On December 3, 2012, Appellant entered into a negotiated plea agreement with the Commonwealth. Specifically, he pled guilty to all charges, except aggravated assault of an unborn child, to which he pled no contest. *See* N.T., Guilty Plea & Sentencing H'rg, at 5-6. The parties agreed Appellant would be sentenced to an aggregate term of 4 to 8 years' incarceration, followed by a consecutive term of four years' probation. *See id.* at 3. The trial court accepted the plea and sentenced Appellant accordingly. The 4-to-8-year prison term was imposed on the aggravated assault charge, and concurrent terms of 6 to 23 months' imprisonment were imposed on the counts of simple assault, unlawful restraint, and false imprisonment.[3] The four-year consecutive probationary term was imposed on Appellant's conviction of aggravated assault of an unborn child. The trial court explicitly ordered that Appellant "have **no contact direct or indirectly with the victim**" and "attend and complete a 26 week batterer's course." *Id.* at 13 (emphasis added); *see* Sentencing Order, 12/10/12, at 2 (unpaginated). No direct appeal was filed.

_____

[2] *See* 18 Pa.C.S. §§ 2702(a)(1), 2701(a)(1), (3), 2902(a)(1), 2903(a), and 2709(a)(3), respectively. Appellant was also originally charged with several sexual offenses, including rape and involuntary deviate sexual intercourse, based upon S.B.'s report to police that Appellant forced her to have anal sex on January 16, 2012. *See* Affidavit of Probable Cause, 4/26/12, at 2. However, the Commonwealth agreed to withdraw all of the sexual crimes in exchange for Appellant's negotiated plea. *See* Appellant's Guilty Plea Colloquy, 12/3/12, at 4.

[3] The court imposed a $150 fine for the summary offense of harassment.

Appellant served his entire 8-year prison sentence. ***See*** N.T., Revocation H'rg, 1/27/21, at 7. He was released on January 17, 2020, at which time he began serving his probationary term. ***Id.*** In March of 2020, Appellant's state parole agent, Elizabeth Lucas,[4] received a call from a woman, G.I., claiming: (1) she was Appellant's current girlfriend, (2) Appellant was "harassing her[,]" and (3) "she was scared of him[.]" ***Id.*** at 11. Agent Lucas instructed G.I. to call the police and report the harassment. ***Id.*** She then "made contact" with Appellant, informed him of G.I.'s allegations, and "provided him written instructions[, which Appellant signed,] that he was not permitted to have any contact with" G.I. ***Id. See*** Commonwealth's Response to Appellant's Petition for Writ of Habeas Corpus, 12/21/20, Exhibit A, Parole Violation Warning/Instruction, 3/23/20 (instructing Appellant, "You may have no contact with [G.I.] for any reason under any circumstance.").

Meanwhile, Pennsylvania State Trooper Mark Zearfaus interviewed G.I., who told the trooper Appellant had physically assaulted her. ***See*** N.T., Revocation H'rg, at 13, 36-37. Trooper Zearfaus observed G.I.'s injuries and, on March 25, 2020, filed charges of simple assault and harassment against

---

[4] Agent Lucas testified that she is employed by "State Parole" as a "Specialized Sex Offender Agent." N.T., Revocation H'rg, at 6-7. She became Appellant's supervisor "a couple of months after he had been out." ***Id.*** at 7. She explained that, in December of 2017, Appellant signed a document, accepting that "State Parole would supervise his probation." ***Id.*** Thus, although Appellant was only on **probation** after his release, he was supervised by a State Parole Agent.

- 4 -

Appellant.  *Id.* at 13, 37-38.  In response to these new charges, Agent Lucas

detained Appellant "on a pending [probation] violation."  *Id.* at 13.

In October of 2020, the charges relating to Appellant's alleged abuse of

G.I. were dismissed because G.I. refused to testify.  N.T., Revocation H'rg, at

39.  Nevertheless, Appellant remained detained pending a probation

revocation because Agent Lucas learned that Appellant continued to have

contact with G.I. after he signed the "no contact" order, and while he was in

prison awaiting trial on charges that he assaulted her.[5]  *Id.* at 18.

Subsequently, the Commonwealth sought revocation of Appellant's

probation, and a ***Gagnon I***[6] hearing was conducted before a Magisterial

District Judge (MDJ) on November 16, 2020.[7]  ***See*** Appellant's Petition for Writ

of Habeas Corpus, 12/2/20, at 1.  On December 2, 2020, Appellant filed a

petition for writ of *habeas corpus* asserting the "sole violation presented" for

the revocation of his probation "was failing to abide by [the] 'no contact'

instruction" with G.I.  *Id.* at 1.  He asserted that because that condition was

not imposed by the trial court — but rather, only by his parole agent — the

revocation of his probation on that basis was improper.  ***See id.*** at 1-2.  The

_____

[5] At the revocation hearing, the Commonwealth presented evidence that Appellant and G.I. had twelve video visits between April 25 and May 9, 2020. ***See*** N.T., Revocation H'rg, at 32-33, 40-41.

[6] ***See Gagnon v. Scarpelli***, 411 U.S. 778 (1973).

[7] Neither the revocation petition, nor a transcript or paperwork from the ***Gagnon I*** hearing, is included in the certified record.

Commonwealth filed a response, admitting that it sought to revoke Appellant's probation based only on his failure to abide by the no contact order with G.I. *See* Commonwealth's Response to Appellant's Petition for Writ of Habeas Corpus, 12/21/20, at 1 (unpaginated). The Commonwealth further stated that Appellant was provided that "written instruction as a condition of supervision," and he signed the document. *Id.*

The trial court conducted a revocation hearing on January 27, 2021. Appellant conceded that he "did, indeed, have contact with" G.I. in violation of the supervision condition imposed by Agent Lucas. N.T., Revocation H'rg, at 4, 43. However, he challenged Agent Lucas's authority to impose such a condition. *Id.* at 4. At the conclusion of the hearing, the trial court asked both parties to file memoranda on the legal question at issue. *Id.* at 43. Thereafter, on March 19th, the trial court entered an order denying Appellant's petition for writ of *habeas corpus*.[8] The court found that the parole agent's condition of supervision — that Appellant have no contact with G.I. — was "germane to" and "elaborate[d] on a condition imposed by the sentencing court[,]" specifically, that Appellant have no contact with the victim (S.B.) in the underlying case. Order, 3/19/21, at 2. Thus, the court concluded "the parole office was well within their authority to impose this condition to protect the current girlfriend." *Id.* (footnote omitted).

---

[8] The trial court initially entered an order denying the petition on December 21, 2020. However, the court entered another order on March 19, 2021, which also included an explanation of the court's reasoning.

On March 24, 2021, the trial court sentenced Appellant to a term of 2 1/2 to 8 years' imprisonment, followed by three years' probation upon the revocation of his probation for aggravated assault of an unborn child. Additionally, the court imposed, *inter alia*, the following conditions:

> 1. [Appellant] must abide by all sex offender conditions.
>
> 2. Comply with the Pennsylvania Board of Probation Parole, special conditions for sexual offenders.
>
> 3. Comply with any optional special conditions for sexual offenders imposed by the parole board.
>
> 4. Successfully complete sex offender treatment.
>
> 5. Refrain from contact with all victims, including the present victim in this particular revocation matter as well as the original victim. . . .

N.T., Revocation Sentencing H'rg, 3/24/21, at 6-7.

Appellant filed a timely post-sentence motion on April 2, 2021, followed by a timely notice of appeal on April 13th. **See** Pa.R.Crim.P. 708(E) (filing of motion to modify sentence following probation revocation "will not toll the 30-day appeal period"). Appellant also complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant frames his three issues on appeal as follows:

> I. Whether the condition that Appellant is accused of violat[ing] was properly imposed by the sentencing court?
>
> II. Whether Appellant's sentence on a technical probation violation of not less than two and a half (2 1/2) years of incarceration to not more than eight (8) years of incarceration followed by thee (3) years of probation constituted an abuse of discretion and was too harsh under the circumstances?

III. Whether it was an abuse of discretion or a violation of Appellant's due process rights to impose sex offender conditions on him when there was no basis for doing so?

Appellant's Brief at 5.[9]

When considering an appeal following the revocation of probation,

[o]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. . . .

***Commonwealth v. Simmons***, 56 A.3d 1280, 1286 (Pa. Super. 2012) (citations omitted). Furthermore, we note: "Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." ***Commonwealth v. Colon***, 102 A.3d 1033, 1041 (Pa. Super. 2014) (citation omitted)

In his first issue, Appellant challenges the underlying basis for his probation revocation. He argues the condition of his probation he was charged with violating — that he have no contact with G.I. — "was not imposed by the [trial c]ourt[, but rather,] was drafted by his state probation officer." Appellant's Brief at 12. Because the legislature empowers the court, and not probation officers, to impose conditions of probation, Appellant maintains the trial court improperly revoked his probation for violating a condition that was not court-imposed. ***See id.*** at 12-13. While he acknowledges probation

---

[9] As noted ***infra***, because our resolution of Appellant's first issue is dispositive, we need not address his remaining claims on appeal.

officers may "impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court[,]" Appellant insists the no-contact provision at issue here — which involved a **different victim in a separate incident** — "was not germane to or an elaboration of a condition imposed" in the case *sub judice*. **Id.** at 13, *citing* **Commonwealth v. Elliott**, 50 A.3d 1284, 1292 (Pa. 2012). Thus, he contends the trial court had no basis to revoke his probation. To the extent the trial court relies on other "additional violations" in its opinion, Appellant argues these violations "were not addressed by the previous hearings or put forth by the Commonwealth as violations." Appellant's Brief at 15.

The authority to impose conditions of probation lies with the trial court. Pursuant to the Sentencing Code, a trial court must "attach" to an order of probation "reasonable conditions . . . as it deems necessary to ensure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b).[10] **See also Elliott**, 50 A.3d at 1290. However, in **Elliott**, our Supreme Court recognized that probation officers are also authorized to "establish uniform standards for the supervision of probationers . . . and further to implement those standards and conditions." **Elliott**, 50 A.3d at 1291. The Court explained:

> [T]he [Probation] Board and its agents may impose conditions of
> supervision that are germane to, elaborate on, or interpret any

---

[10] Section 9754(b) refers to a list of enumerated conditions of probation outlined in Section 9763(b). **See** 42 Pa.C.S. §§ 9754(b), 9763(b)(1)-(15).

conditions of probation that are imposed by the trial court. This interpretation gives meaning to all of the statutory provisions . . . and thus: (1) maintains the sentencing authority solely with a trial court; (2) permits the Board and its agents to evaluate probationers on a one-on-one basis to effectuate supervision; (3) sustains the ability of the Board to impose conditions of supervision; and (4) authorizes that a probationer may be detained, arrested, and "violated" for failing to comply with **either a condition of probation or a condition of supervision**. In summary, a trial court may impose conditions of probation in a generalized manner, and the Board or its agents may impose more specific conditions of supervision pertaining to that probation, **so long as those supervision conditions are in furtherance of the trial court's conditions of probation**.

*Id.* at 1292 (emphases added).

Recently, in ***Commonwealth v. Foster***, 214 A.3d 1240 (Pa. 2019), the Supreme Court further clarified that a trial court may revoke an order of probation only upon "proof" that the defendant violated one of the "**specified conditions** of the probation." ***Id.*** at 1250 (emphasis added), *citing* 42 Pa.C.S. § 9771(b). The Court explained: "[A] violation of probation does not occur solely because a judge believes the probationer's conduct indicates that probation has been ineffective to rehabilitate or to deter against antisocial conduct." ***Foster***, 214 A.3d at 1243.

In that case, the trial court revoked the defendant's probation based upon photographs on the defendant's social media accounts that "depicted guns, drugs, [and] large amounts of money[.]" ***Foster***, 214 A.3d at 1243. The court found that, while the photographs did not prove the defendant violated a **specific condition** of his probation, they did evince his "indifference regarding his crimes" and "clearly indicate[ ] that probation was

- 10 -

an ineffective vehicle to accomplish his rehabilitation[.]" *Id.* at 1245 (record citation omitted). On appeal, a panel of this Court affirmed, relying upon language in *Commonwealth v. Infante*, 888 A.2d 783 (Pa. 2005), that a probation violation is established if it is "shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." *Foster*, 214 A.3d at 1245 (citations omitted).

However, the Supreme Court reversed our ruling, concluding the language in *Infante* was taken out of context. *Foster*, 214 A.3d at 1251. The Court explained:

> Read in context, it is clear that the effectiveness of probation as a rehabilitative tool and as a deterrent to antisocial conduct is the lens through which a violation is to be viewed. Revocation and resentencing are warranted if, **in the face of a new criminal act or the violation of a condition of probation**, the court finds that probation is no longer achieving its desired aims of rehabilitation and deterring criminal activity. As the statute provides (and *Infante* reflects), a court never reaches this question unless there is a violation of a **specified term of the probation order** or the probationer commits a new crime.

*Id.* (citations omitted and emphases added). Moreover, in a footnote, the Court explicitly stated:

> We expressly disapprove of the Superior Court's reliance on this passage from *Infante* . . . for the proposition that revocation of probation is permissible in the absence of a finding that the defendant violated a specified condition of probation if the VOP court finds that probation has been ineffective to rehabilitate or to deter against antisocial conduct.

*Id.* at 1251 n.14.

- 11 -

Recently, this Court re-emphasized the statutory requirement that a trial court "specifically advise [a defendant] of the conditions of his probation and parole at the time of his initial sentencing." ***Commonwealth v. Koger***, 255 A.3d 1285, 1290 (Pa. Super. 2021), *citing* 42 Pa.C.S. § 9754(b). In that case, the defendant received a probationary sentence, following a guilty plea to criminal use of a communication facility in connection with his possession of child pornography. ***Koger***, 255 A.3d at 1287. The trial court advised the defendant of the following "special conditions" of his sentence: (1) that he have no contact with any victims including those displayed in the images, (2) that he undergo a drug and alcohol evaluation and complete any recommended treatment, and (3) that he perform 100 hours of community service and complete sex offender counseling. ***Id.*** The court did not provide the defendant with any specific conditions of his probation or parole, but rather, noted the rules and conditions of his probation and parole "were explained [to him] by an adult probation officer **immediately following** the sentencing proceeding." ***Id.*** at 1290 (citation omitted and emphasis added).

Subsequently, the Commonwealth sought to revoke the defendant's probation and parole after, *inter alia*, a search of his cell phone uncovered "pornographic images of a minor [the defendant] has been communicating with via text messages." ***Koger***, 255 A.3d at 1288. Following a hearing, the trial court revoked the probationary sentence and imposed a one-to-three-year prison term. ***Id.***

On appeal, this Court reversed the order revoking the defendant's probation and parole, concluding the trial court failed "to specifically advise [the defendant] of the conditions of his probation and parole at the time of his initial sentencing." *Koger*, 255 A.3d at 1290. We opined:

> Because the trial court did not impose, at the time of the [initial] sentencing any specific probation or parole conditions, the court could not have found [the defendant] "violated one of the 'specific conditions' of probation [or parole] included in the probation order[.]" *See Foster*, 214 A.3d at 1250. In short, a sentencing court may not delegate its statutorily proscribed duties to probation and parole offices and is required to communicate any conditions of probation or parole as a prerequisite to violating any such condition.

*Id.* at 1291 (footnote omitted). Thus, we vacated the judgment of sentence imposed on the probation revocation. *Id.*

In the present case, the trial court acknowledged that the specific "no contact" provision Appellant violated was imposed by his probation officer, not the court. *See* Trial Ct. Op. at 3. However, relying on *Elliott*, the trial court found the provision at issue was "germane to, or certainly elaborate[d] on a condition imposed by the sentencing court" — that is, the no contact order concerning the victim in the underlying case. *Id.* at 4. The court opined:

> Once the parole office was notified of a similar situation (one where [Appellant] was now abusing a current girlfriend), the parole office was well within their authority to impose this condition to protect the current girlfriend. The Board imposed a condition that is similar to the one that was originally imposed, a no-contact provision on behalf of a victim that was [Appellant's] girlfriend at the time. Additionally, the sentencing court recognized the aggressive behavior of [Appellant] and ordered him to attend batterer's counseling. Likewise, when the Board discovered that [Appellant] was being physically aggressive to an

individual, it was within the Board's power to impose a condition to protect that individual, including the issuance of a no-contact provision. . . .

*Id.*

Upon our review of the relevant statutory and case law, we are constrained to conclude the trial court exceeded its authority when it revoked Appellant's probation based upon his admitted violation of a supervisory condition imposed by his parole agent. **See Simmons**, 56 A.3d at 1286. Neither the trial court, nor the Commonwealth, dispute the fact that the condition at issue was **not** imposed by the court at the time of the initial sentencing. **See** Trial Ct. Op. at 3-4; Commonwealth's Brief at 6-7. Rather, they insist Agent Lucas' subsequent written instruction — prohibiting Appellant from having any contact with G.I. — was sufficiently "in furtherance of the trial court's conditions of probation" that it satisfied the requirements of **Elliott**. **Elliott**, 50 A.3d at 1292. **See** Trial Ct. Op. at 4; Commonwealth's Brief at 7-8. We disagree.

Both **Foster** and **Koger** make clear that a trial court may revoke a defendant's probation **only** if the defendant (1) commits a new crime or (2) violates a specific, **court-imposed** condition of his probation, or a Board-imposed condition of supervision in furtherance of the court's conditions. Here, Agent Lucas's directive that Appellant have no contact with G.I. was neither court-imposed, nor in furtherance of the two court-imposed conditions — that Appellant have no contact with the victim (S.B.) and attend a batterer's course. G.I. was not the victim in the underlying case. We do not agree that

- 14 -

a "no contact" order for a **different victim involving a separate incident** is "germane to, or elaborate[s] on" the "no contact" condition imposed by the trial court. **See Elliott**, 50 A.3d at 1292. Moreover, directing Appellant to have "no contact" with G.I. has no relation to his purported failure to attend a batterer's course.[11] Thus, we conclude the trial court erred in revoking Appellant's probation based upon his violation of the "no contact" condition imposed by Agent Lucas.

Nevertheless, in its opinion, the trial court attempts to justify its revocation of Appellant's probation based upon three, additional alleged violations — (1) a violation of "Rule 2" because Appellant "picked up new charges" for his assault of G.I.; (2) a violation of "Rule 4" because he failed to refrain from threatening behavior; (3) a violation of "Rule 7" because he failed to make monthly payments towards his restitution; and (4) a violation of "Rule 12" because he failed to follow his probation officer's instructions. **See** Trial Ct. Op. at 7, 9. The court acknowledges that the new charges were later dismissed because G.I. refused to cooperate. However, it noted that

---

[11] While the Commonwealth now insists Appellant did not complete the batterer's course, there was no mention of this probation condition during the revocation hearing. **See** Commonwealth's Brief at 7. To the extent the trial court implies **Appellant** failed to establish he completed the course, we note that the Commonwealth bears the burden of proof in a probation revocation hearing. **See** Trial Ct. Op. at 4 n.9 ("There was no evidence introduced to suggest that [Appellant] had completed the course."); **Commonwealth v. Perreault**, 930 A.2d 553, 558 (Pa. Super. 2007) ("The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence, that the probationer's conduct violated the terms and conditions of his probation[.]").

"when a charge is *nolle prossed*, the Commonwealth is not prevented from pursuing a violation of probation if evidence is presented to demonstrate that a crime occurred." ***Id.*** at 7 (citation and emphasis omitted). Here, the court found Trooper Zearfus's credible testimony at the revocation hearing provided sufficient evidence that a crime occurred to violate Appellant's probation on that basis. ***See id.*** at 8-9.

We conclude that the trial court's reliance on these "additional" alleged violations is misplaced. First, the "Rules" to which the trial court refers are not in the certified record. What is clear, however, is that, as in ***Koger***, these "Rules" were not provided to Appellant at the time of his initial sentencing and, thus, not court-imposed. ***See Koger***, 255 A.3d at 1290-91.

Second, in responding to Appellant's *habeas corpus* petition, the Commonwealth **admitted** that the "**sole violation** presented" to the MDJ at the ***Gagnon I*** hearing was Appellant's failure "to abide by a no-contact instruction with" G.I. ***See*** Appellant's Petition for Writ of Habeas Corpus at 1 (emphasis added); Commonwealth's Response to Appellant's Petition at 1.

Third, our review of the transcript from the revocation hearing reveals the focus of that proceeding was Appellant's continued violation of the "no contact" order. In fact, the trial court noted twice that Appellant **did not contest** the fact that he violated the "no contact" order, but rather, argued his probation officer had no authority to impose that condition. ***See*** N.T., Revocation H'rg, at 4-5, 43-44. The court repeated this in its March 19, 2021, order denying Appellant's petition for writ of *habeas corpus*. ***See*** Order,

3/19/21, at 1 n.1 ("[Appellant] does not contest the [probation] violation. [Appellant] does, however, contest the . . . officer's ability to place that condition on him.").

Thus, upon our review of the record, it is evident the basis for Appellant's probation revocation was his violation of the "no contact" order imposed by Agent Lucas. Accordingly, we reject the trial court's belated reliance on "additional violations" to support its ruling. This Court's decision in *Commonwealth v. Carter*, 523 A.2d 779 (Pa. Super. 1987), is instructive.

In *Carter*, the defendant appeared for a *Gagnon I* hearing to "determine whether probable cause existed for believing that [he] had violated the terms of his probation by committing one or more new offenses." *Carter*, 523 A.2d at 780. However, during the hearing, the trial court "learned that [the defendant] failed to report as ordered during probation." *Id.* Based on that information, the court "immediately revoked probation and imposed a [new] sentence[.]" *Id.* The new offenses, which provided the basis for the revocation proceeding, were later dismissed. *See id.*

On appeal, this Court explained:

> "[D]ue process requires that a probationer receive written notice of the claimed probation violations prior to commencement of the revocation hearing. . . ." The purpose of requiring prior written notice "is to ensure that the ... probationer can sufficiently prepare his case, both against the allegations of violations, and against the argument that the violations, if proved, demonstrate that . . . probation is no longer an effective rehabilitative tool and should be revoked. . . . [T]he requirement bears directly on the ability to contest revocation."

*Carter*, 523 A.2d at 780. Accordingly, the *Carter* panel held that the trial court "committed error" when it "changed direction" during the revocation hearing and found the defendant had committed a technical violation of his probation, when the defendant had "received no notice of any alleged technical violation of his probation before he appeared before the court." *Carter*, 523 A.2d at 781.

The same is true here. There is no evidence in the record that these other purported bases for revoking Appellant's probation were included in the revocation petition, or presented to the MDJ at the *Gagnon I* hearing. Thus, we conclude the trial court erred to the extent it relied on these purported violations in revoking Appellant's probation. *See Carter*, 523 A.2d at 781.

Because we agree with Appellant that the trial court improperly revoked his probation based upon a purported violation of a condition that was not court-imposed, we reverse the order revoking his probation, and vacate the judgment of sentence. Moreover, because we vacate the judgment of sentence, we need not address Appellant's remaining two claims, which concern the sentence imposed following revocation.

Violation of probation order reversed. Judgment of sentence vacated. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>01/19/2022</u>