J. S69020/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAMES P. CANNON III, | : | No. 1595 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, April 27, 2015,
in the Court of Common Pleas of Chester County
Criminal Division at No. CP-15-CR-0005047-2005

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND OLSON, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JANUARY 13, 2016**

James P. Cannon, III, appeals from the judgment of sentence of April 27, 2015, following revocation of his probation.  Appointed counsel, Erin N.B. Bruno, Esq., has filed a petition to withdraw and accompanying **_Anders_** brief.[1]  After careful review, we grant the withdrawal petition and affirm the judgment of sentence.

In a prior published opinion affirming appellant's original judgment of sentence on direct appeal, this court set forth the history of this case as follows:

> On February 17, 2006, Cannon entered an open guilty plea to twenty-five counts of possession of child pornography,[Footnote 1] two counts of solicitation to prostitution,[Footnote 2] two counts of

---

[1] **_See Anders v. California_**, 386 U.S. 738 (1967), and **_Commonwealth v. McClendon_**, 434 A.2d 1185 (Pa. 1981).

solicitation to indecent assault,[Footnote 3] and one count of corruption of minors.[Footnote 4] The factual basis for the plea follows:

In July 2005, the West Whiteland Police were contacted regarding an incident involving a 14 year old boy. The boy's mother called the police to report that her son had been chatting online with a man later identified as defendant, 39 year old James Cannon.

On July 4th, 2005 the victim had gone to the area of Pierce Middle School to meet [Cannon]. [Cannon] had been chatting online with the victim for several months. The victim was using the screen name of Alley Hopping and [Cannon] was using the screen name of Agent 975. Over the course of time [Cannon] chatted with the victim and learned that the boy was 14 years old. During these online computer chats [Cannon] engaged in conversations with the victim in which he requested that the victim and [Cannon] meet for the purpose of engaging in sexual acts.

On July 4th, 2005 [Cannon] instant messaged, or IMed, the victim, and once against [sic] asked him sexually related questions and offered to give the boy money in exchange for the acts.

On July 4th, 2005 during this online chat [Cannon] arranged to meet the boy in the area of Pierce Middle School at approximately 5:30 p.m. The victim arrived in the area of the middle school and [Cannon] arrived in the vehicle. The boy got in the car and spoke with [Cannon] for approximately 15 minutes. [Cannon] would provide only his first name to the victim.

The victim would testify that [Cannon] requested masturbation and oral sex from the victim. [Cannon] drove the boy to Wawa where he purchased cigarettes for the boy. The victim declined to engage in any sexual acts and left the vehicle.

The victim told police after he left the vehicle he walked around for 15 minutes, then contacted his mother who contacted the police. The West Whiteland Police and Chester County Detectives created a photographic lineup from which the victim was able to identify [Cannon].

A search warrant was then executed at [Cannon's] residence in West Whiteland Township in Chester County. The computer equipment was seized and searched. Over 100 images of child pornography were located on the computer along with several web cam videos of teenage boys masturbating. He admitted to IMing the victim on several occasions, but less than a year, unquote.

Initially [Cannon] told the police he met the victim for the purpose of buying him cigarettes. [Cannon] denied asking for sexual acts for money. However, the information from the computer showed discussions consistent with what the victim had disclosed to the police.

These conversations clearly showed that [Cannon] was offering the victim money for sexual acts.

N.T. Guilty Plea Hearing, 2/17/06, at 4-6.

The trial court ordered the Sexual Offender's Assessment Board ("SOAB"), to assess whether Cannon was a sexually violent predator ("SVP") and also ordered a pre-sentence report. *Id.* at 19-20. In the interim, on August 3, 2006, Cannon filed a motion for a court-appointed psychological expert, claiming that he could not afford one. Following an evidentiary hearing, the trial court denied the motion because it determined that Cannon was not indigent. N.T. Motion Hearing, 8/9/06, at 7-9. A Megan's Law hearing was held on September 18, 2006. The court heard testimony from SOAB assessor Dr. Bruce Mapes. After extensive discussion of the basis for his decision in accordance with the dictates of the pertinent statutory framework, Dr. Mapes concluded that Cannon was an SVP. N.T. SVP Hearing, 9/18/06, at 4-86. The court subsequently accepted that testimony and determined that Cannon was an SVP. *Id.* at 87-90.

The case proceeded to sentencing that same date, where Cannon was sentenced to an aggregate sentence of 34 to 68 months of imprisonment followed by 12 years of probation. Post-sentence motions were filed on October 10, 2006; and the sentence was vacated by order entered October 18, 2006. On October 27, 2006, the trial court re-sentenced Cannon to an aggregate sentence of 29 to 59 months of imprisonment followed by 12 years of probation. This timely appeal followed.

---

[Footnote 1] 18 Pa.C.S.A. § 6312(d).

[Footnote 2] 18 Pa.C.S.A. § 902, 5902(b).

[Footnote 3] 18 Pa.C.S.A. § 902, 3126(a)(8).

[Footnote 4] 18 Pa.C.S.A. § 6301(a)(1).

**Commonwealth v. Cannon**, 954 A.2d 1222, 1223-1225 (Pa.Super. 2008),

**appeal denied**, 964 A.2d 893 (Pa. 2009) (footnote 5 omitted). On

August 6, 2008, this court affirmed the judgment of sentence. *Id.* On January 22, 2009, our supreme court denied appellant's petition for allowance of appeal.

Appellant was paroled in 2011. He completed his state parole and was being supervised by the Pennsylvania Board of Probation and Parole ("the Board") on the 12-year consecutive period of probation. According to his probation officer, appellant was uncooperative and unwilling to participate in sex offender treatment, which was a condition of his probation. Appellant was unsuccessfully discharged from the sex offenders program on or about January 25, 2015. On January 30, 2015, the Board filed a petition to find appellant in technical violation of his probation, and a detainer was lodged.

A probation violation hearing was held on April 27, 2015. Appellant was found to be in violation of his probation and was sentenced to 34 to 68 months' incarceration, followed by 14 years of probation. The trial court granted appellant's motion to modify or reduce sentence; and on May 22, 2015, following a hearing, the trial court sentenced appellant to 24 to 68 months' incarceration, followed by 14 years of probation.

This timely appeal followed. On June 5, 2015, appellant was ordered to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days. On June 11, 2015, counsel for appellant filed a statement of intent to file an *Anders* brief in lieu of filing a concise

statement, pursuant to Rule 1925(c)(4). On June 16, 2015, the trial court filed a Rule 1925(a) opinion, directing this court to the sentencing hearings of April 27, 2015 and May 22, 2015, as providing the reasons for its sentence.

Appellant raises a single issue for this court's review, challenging the discretionary aspects of sentencing:

> Does imposition of a state prison sentence for a [probation] violation in a Child Pornography case raise a substantial question that the Sentencing Code was violated by the trial Court, who imposed the sentence after a decision that the Appellant had failed to meet terms of the Court's [probation] supervision by failure to successfully complete sex offender treatment? Is such a sentence an abuse of the Judge's discretion?

Appellant's brief at 3.

Counsel having filed a petition to withdraw, we reiterate that "[w]hen presented with an *Anders* brief, this court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa.Super. 2010), citing *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (citation omitted).

> In order for counsel to withdraw from an appeal pursuant to *Anders*, certain requirements must be met, and counsel must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record;

- 6 -

> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.*, quoting **Commonwealth v. Santiago***,* 978 A.2d 349, 361 (Pa. 2009).

Upon review, we find that Attorney Bruno has complied with all of the above requirements. In addition, Attorney Bruno served appellant a copy of the **Anders** brief, and advised him of his right to proceed **pro se** or hire a private attorney to raise any additional points he deemed worthy of this court's review. Appellant has not responded to counsel's motion to withdraw. As we find the requirements of **Anders** and **Santiago** are met, we will proceed to the issues on appeal.

Essentially, appellant is arguing that his technical violations of probation by failing to participate in sex offender treatment did not support a state sentence. "The imposition of a sentence of total confinement after the revocation of probation for a technical violation, and not a new criminal offense, implicates the 'fundamental norms which underlie the sentencing process.'" **Commonwealth v. Crump**, 995 A.2d 1280, 1282 (Pa.Super. 2010), **appeal denied**, 13 A.3d 475 (Pa. 2010), quoting **Commonwealth**

*v. Sierra*, 752 A.2d 910, 913 (Pa.Super. 2000). "Additionally, a substantial question that the sentence was not appropriate under the Sentencing Code may occur even where a sentence is within the statutory limits." *Id.*, citing *Commonwealth v. Titus*, 816 A.2d 251 (Pa.Super. 2003). We determine appellant has raised a substantial question regarding the appropriateness of his sentence, and will proceed to review the merits of his claim.[2]

> Our standard of review is well-settled. We have explained:
>
> > The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable,

---

[2] Pa.R.A.P. 2119(f) states:

> **(f) Discretionary aspects of sentence.** An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Even in the *Anders* context, the Rule 2119(f) statement is required with respect to discretionary sentencing challenges. *Commonwealth v. Wilson*, 578 A.2d 523, 525 (Pa.Super. 1990). Appellant has complied with this requirement. (Appellant's brief at 3.)

> or the result of partiality, prejudice, bias or ill-will.
>
> ***Commonwealth v. Simmons***, 56 A.3d 1280, 1283-84 (Pa.Super.2012).
>
> > In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.
>
> ***Commonwealth v. Mouzon***, 828 A.2d 1126, 1128 (Pa.Super.2003).

***Commonwealth v. Colon***, 102 A.3d 1033, 1043 (Pa.Super. 2014), ***appeal denied***, 109 A.3d 678 (Pa. 2015). ***See also Commonwealth v. Cartrette***, 83 A.3d 1030 (Pa.Super. 2013) (***en banc***) (this court's scope of review in an appeal from a revocation sentencing includes discretionary sentencing challenges).

> Upon revoking probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration. 42 Pa.C.S.A. § 9771(b). "[U]pon revocation [of probation] . . . the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence." ***Commonwealth v. Infante***, 63 A.3d 358, 365 (Pa.Super.2013) (internal quotation marks and citations omitted). However, 42 Pa.C.S.A. § 9771(c) provides that once probation has been revoked, a sentence of total confinement may only be imposed if any of the following conditions exist:

> (1) the defendant has been convicted of another crime; or
>
> (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
>
> (3) such a sentence is essential to vindicate the authority of the court.
>
> 42 Pa.C.S.A. § 9771(c).

*Id.* at 1044. We also note that the sentencing guidelines do not apply to sentences imposed as the result of probation revocations. ***Commonwealth v. Coolbaugh***, 770 A.2d 788, 792 (Pa.Super. 2001) (citations omitted).

Instantly, both Section 9771(c)(2) and (3) apply. The record indicates that appellant did not complete sex offender classes while incarcerated. (Notes of testimony, 5/22/15 at 14.) Once released, while on probation, appellant continued to refuse to cooperate with treatment. Appellant was discharged in 2012 from a program called Human Services in Downingtown, after failing a polygraph examination. (Notes of testimony, 4/27/15 at 25.) Appellant was referred to a different treatment provider, Pennsylvania Forensics, but continued to arrive late or miss appointments without legitimate excuse. (*Id.* at 26-27.) In August 2014 appellant failed another polygraph. (*Id.* at 6.) Dr. David Holden stated that in his opinion, appellant is not amenable to treatment. Dr. Holden described appellant's demeanor in group therapy as "oppositional, argumentative." (*Id.* at 5.) Dr. Holden recommended appellant be discharged because he did not want to

meaningfully participate in a productive manner. (*Id.* at 5-6.) Dr. Holden testified, "[I]n my opinion the reason that -- the largest reason, I guess I would have characterized it that way, is [appellant] was discharged from treatment was his presentation in treatment. His oppositional, his defiant nature, his refusal to take feedback. His, basically, his refusal to be treated." (*Id.* at 22-23.)

As the trial court remarked,

> . . . almost five years you didn't engage in any treatment there [(while in prison)]. And then, upon your parole, you were discharged from two additional treatment programs. That's the reality. Whatever the excuse is that you run through your head that makes it difficult for you to complete this, are your own reasons, but not satisfactory to the Court.

Notes of testimony, 5/22/15 at 15. "So you were paroled after your statutory maximum. And then you could not avoid going to treatment at that point, and yet the treatments never went well. The record was replete with people trying to bend over backwards to help you get treatment." (*Id.* at 16.)

Appellant has been classified a sexually violent predator, and his continuing refusal to accept sex offender treatment both increases the likelihood of re-offense and indicates a lack of respect for the court and for the conditions of his supervision. As Attorney Bruno observes,

> Counsel believes that this sentence is long, but the Court viewed it as warranted given the failure, over a course of almost ten years, to engage in sexual

> offender treatment, both because failure to comply with treatment undermines the authority of the Court, and a failure to engage in such a way gives the Court no confidence that further crimes of this nature will not be committed. The reasons were explained as a sanctioning [of] a defendant who, if he has refused to comply with the order of the Court, posed a threat to the community as well as having thwarted the Court's orders.

Appellant's brief at 10-11.

For the reasons discussed above, we determine that appellant's issues on appeal are wholly frivolous and without merit. Furthermore, after our own independent review of the record, we are unable to discern any additional issues of arguable merit. Therefore, we will grant Attorney Bruno's petition to withdraw and affirm the judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2016