J-S28027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                       :           PENNSYLVANIA
                                         :
             v.                           :
                                         :
                                         :
EDWARD MICHAEL CARHARDT      :
                                         :
              Appellant              :    No. 805 EDA 2024

Appeal from the Judgment of Sentence Entered February 9, 2024
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0002094-2013

BEFORE: STABILE, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:           **FILED SEPTEMBER 6, 2024**

Edward Michael Carhardt (Appellant) appeals from the judgment of sentence entered following his violation of probation. After careful consideration, we affirm.

The trial court detailed the lengthy history underlying this appeal as follows:

> In early 2012, Appellant, a resident of New Jersey with no ties to Monroe County, was charged with two counts of Burglary, a felony of the first degree[, 18 Pa.C.S.A. § 3502]; two counts of Criminal Trespass, a felony of the second degree[, *id.* § 3503]; two counts of Theft by Unlawful Taking, a felony of the third degree[, *id.* § 3921]; and two counts of Criminal Mischief, a summary offense, [*id.* § 3304,] for burglarizing two occupied homes in [Monroe County]. The burglaries occurred four and five months after Appellant was released from prison in New Jersey for committing similar crimes there.
>
> Unfortunately, [Appellant's] thefts and burglaries continued [after the Monroe County offenses]. Disposition of the charges in

[Appellant's Pennsylvania] case was delayed while Appellant was again incarcerated in New Jersey for similar crimes.

On February 13, 2019, [in the instant Monroe County case,] Appellant pled guilty to one count of Criminal Trespass, a felony of the second degree, and one count of Theft by Unlawful Taking, a felony of the third degree. A pre-sentence investigation ("PSI") was conducted by [the] Probation Office and a report [was] prepared for sentencing….

On May 28, 2019, Appellant was sentenced to a time served sentence of 28 to 56 months' incarceration on the Theft conviction,[FN] plus a consecutive period of probation of four years on the Criminal Trespass Conviction, and ordered to pay restitution of $34,497.66. At the time, Appellant was classified as a Repeat Felon for sentencing purposes as the result of 34 adult arrests[,] which led to 16 convictions. (*See* PSI Report).

---

[FN] Defendant was given time credit of 4 years, 9 months, and 5 days, a period in excess of the maximum sentence imposed on the Theft conviction.

---

After sentence was imposed, Appellant's probation was transferred to his home state of New Jersey. In June of 2022, New Jersey returned supervision, reporting that Appellant had [multiple times] violated his probation by testing positive for cocaine three times, subsequently providing a diluted urine drug screen sample, and then twice refusing to submit to drug screens.

Trial Court Opinion, 5/8/24, at 1-2 (footnote in original, citations added).

On June 17, 2022, the Commonwealth filed a petition alleging Appellant violated his probation.

On September 8, 2022, Appellant was found in violation of his probation and resentenced to two years of intensive probation. As special conditions of that probation, Appellant was required to[] "sign full releases in order for the supervising authority to obtain information regarding his treatment, as well as drug screen results, [and] shall continue in weekly treatment as recommended in his drug and alcohol assessment until successfully discharged

and shall maintain gainful employment." (Order entered September 9, 2022). Probation was again transferred to New Jersey.

On September 18, 2022, Appellant filed a motion seeking reconsideration and modification of the resentence. A hearing on the motion was scheduled for November 17, 2022….

*Id.* at 3. The trial court ultimately denied reconsideration. Appellant did not appeal.

Appellant subsequently violated his probation on multiple occasions. The State of New Jersey returned supervision of Appellant to the Pennsylvania trial court,

reporting that Appellant was disruptive and argumentative with his probation officer to the point that the sheriff's office had to be called, tested positive for cocaine, twice gave diluted urine drug screen samples, did not continue in weekly treatment, and did not, as instructed by his probation officer, undergo a drug and alcohol evaluation.

Accordingly, the Commonwealth filed a second petition for violation of probation. The petition was set to be heard at the previously-scheduled November 17, 2022 hearing.

*Id.*

And so began the odyssey leading to the instant appeal. Because of a breakdown in the attorney-client relationship, Appellant's counsel petitioned for and was granted leave to withdraw. The trial court continued the probation violation hearing to allow Appellant time to retain new counsel.

The trial court granted Appellant another continuance to allow new counsel to become familiar with the case. The trial court also granted a continuance to allow Appellant to undergo a drug and alcohol evaluation, and

- 3 -

to explore treatment options as an alternative to incarceration. *See* Trial

Court Opinion, 5/8/24, at 4.

> Subsequently, at the probation violation hearing on February 17, 2023,

> Appellant made a voluntary, knowing, and intelligent admission to violating the terms of his probation. Resentencing was set for a future date[,] so that Appellant and his attorney would be able to present a plan for supervision and treatment instead of re-incarceration, which plan was likely to include Appellant's participation in Teen Challenge. Appellant was informed that the [c]ourt would consider any plan he presented, but all resentencing options were on the table. (N.T., 2/17/2023, pp. 5-10, 21-26, 31-33).

> After several defense continuances of the resentencing hearing, Appellant's attorney filed a motion seeking leave to withdraw[,] citing irreconcilable attorney-client differences regarding strategy for the resentencing. (Motion to Withdraw, filed April 6, 2023). On May 8, 2023, after a hearing, counsel was granted leave to withdraw and the resentencing hearing was continued until late June [2023].

*Id.* at 5.

> Appellant retained a new attorney, who requested continuances on

Appellant's behalf. Eventually, the trial court scheduled Appellant's

resentencing for September 28, 2023. At the resentencing hearing,

> Appellant testified and his mother addressed the [trial court]. Defense counsel presented several documents relating to Appellant's pre-violation efforts regarding [drug and alcohol] treatment and rehabilitation, presented argument, and asked that Appellant be resentenced to time served plus probation. (N.T., 9/28/2023, pp. 8-19, 22-23). The attorney for the Commonwealth presented argument and asked for 30 to 60 months' incarceration, with eligibility for the State Drug Treatment Program ("SDTP"), pointing out that Appellant [originally] had been afforded a very favorable plea and sentence[,] and had violated probation twice. (*Id.* at 19-21). At the end of the hearing, [the trial court] resentenced Appellant to two to four

- 4 -

> years in a State Correctional Facility, followed by one year of probation, and deemed Appellant eligible for the SDTP. [The court] briefly summarized [its] reasons on the record, including references back to the discussions during the hearing at which Appellant admitted to violating probation for the second time. (***Id.*** at 23-27; Judgment of sentence entered September 28, 2023).
>
> Thereafter, Appellant filed a motion and an amended motion alleging that [the trial court] denied him the opportunity to address the [c]ourt before the resentence was imposed[,] and further erred by failing to properly weigh his efforts at drug treatment. (Amended Post Sentence Motion, filed October 6, 2023). As a result, Appellant asked that [the trial court] modify the sentence "to impose a county sentence, and to grant [Appellant] parole directly into an inpatient rehabilitation center." (***Id.*** at ¶ 44).

***Id.*** at 5-6. The trial court granted reconsideration and directed Appellant to request a transcript of the prior hearing to facilitate review of his allocution issue. Trial Court Order, 10/6/23.

> The trial court described what next transpired:
>
> On February 9, 2024, … the hearing on Appellant's motion was convened. By the time the hearing was convened, the transcript of the September 28, 2023[,] resentencing hearing had been filed, although neither party had it in court. Appellant's attorney [abandoned] the assertion that [Appellant] was denied the right of allocution. Instead, [counsel] characterized the reconsideration hearing as being convened to allow Appellant to allocute ….
>
> ….
>
> After providing a summary of the relevant procedural history, [the trial court] indicated that [it] would review the September 28, 2023[,] hearing transcript, allow defense counsel to present documentary evidence he had identified, and permit Appellant to speak on his own behalf. ([N.T., 2/9/2024,] at 3-8). Surprisingly, when given the opportunity to address the [c]ourt, and despite prompts by both his attorney and the Court, Appellant stood

silent. He said nothing and would not respond to either counsel or the [c]ourt for more than three minutes. (*Id.* at 8-9, 11-12).

Then, at the point when the [c]ourt was about to impose sentence, Appellant interrupted, asked for, and was given the opportunity to address the [c]ourt. He did not offer anything new. (*Id.* at 10-20). In addition, at Appellant's request, his wife was permitted to address the [c]ourt. (*Id.* at 21-22).

At the conclusion of the hearing, [the trial court] issued an order vacating [its] prior judgment of resentence so that [the court] could correct an error pertaining to Appellant's eligibility for the [Recidivism Risk Reduction Incentive (RRRI)] program. [The court] then re-sentenced Appellant to the same two to four years [in prison], followed by one year of probation, that [was] previously imposed, and deemed him eligible for the SDTP. (Order entered February 9, 2024; N.T., 2/9/2024, pp. 25-26). [The trial court] attempted to state [its] reasoning on the record, but [was] twice interrupted by Appellant. As a result, [the court was] able to provide only a summary.[FN] (*Id.* at 23-28).

---

[FN] Appellant's verbal interruptions were captured by the two-dimensional record. However, Appellant's tone, body language, facial expressions, and demeanor, [] demonstrated even louder tha[n] his words that Appellant was not interested in the trial court's] explanation….

Trial Court Opinion, 5/8/24, at 6-8 (some footnotes omitted; remaining footnote in original). Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1)     Is the [trial] court's 2-4 year sentence inappropriate under Pennsylvania law, and inconsistent with the fundamental norms of the sentencing process on revocation of a defendant's probation?

2)     Did the [trial] court misapply governing law under 42 [Pa.C.S.A. §] 9771, per Pennsylvania law, providing that imprisonment should be imposed for a violation of probation only where (1) the defendant has been convicted of another crime; (2)

the defendant's behavior suggests a probability of future offenses; or (3) a sentence of total confinement is necessary to uphold the authority of the court?

Appellant's Brief at 3.

Appellant challenges the discretionary aspects of his sentence. We consider a challenge to the discretionary aspects of a sentence to be a petition for permission to appeal, as the right to pursue such a claim is not absolute. ***Commonwealth v. Rhoades***, 8 A.3d 912, 916 (Pa. Super. 2010). Before we can consider a discretionary sentencing challenge, we conduct a four-part analysis determining

> (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [***see***] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [***see***] 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (some citations omitted).

Instantly, Appellant filed a post-sentence motion for reconsideration and a timely notice of appeal. Although Appellant failed to file a Pa.R.A.P. 2119(f) statement of reasons relied upon for allowance of appeal, the Commonwealth did not object to this omission. ***See Commonwealth v. Kiesel***, 854 A.2d 530, 533 (Pa. Super. 2004) ("[W]hen the appellant has not included a Rule 2119(f) statement and the appellee has not objected, this Court may ignore

the omission and determine if there is a substantial question that the sentence imposed was not appropriate[.]").

Appellant claims his sentence of total confinement, following a technical violation of probation, constitutes an excessive sentence. Appellant's Brief at 9. Appellant's issue raises a substantial question. *Commonwealth v. Mouzon*, 812 A.2d 617, 624 (Pa. 2002) (recognizing a claim of an excessive sentence may raise a substantial question). Accordingly, we will address Appellant's sentencing challenge.

Although Appellant presents two issues in his statement of questions involved, he combines those issues in the argument section of his brief. Accordingly, we address them together.

Appellant claims that the trial court's revocation sentence failed to follow the governing law

> under which a court may impose a sentence of total confinement
> ... only if it finds that the defendant has been convicted of another
> crime; the defendant's behavior suggests a probability of future
> offenses; or a sentence of total confinement is necessary to
> uphold the authority of the court....

Appellant's Brief at 11 (citations omitted). Appellant argues his violations, including his refusal to submit to a drug screen, were based on his drug addiction issues. *Id.* Appellant asserts he was not convicted of another crime, and the trial court failed to "make any findings" that his behavior suggested a probability of future offenses. *Id.* Appellant further contends the trial court

- 8 -

failed to render a finding that a sentence of total incarceration was necessary to vindicate the court's authority. *Id.*

Appellant submits the trial court misapplied the sentencing guidelines by imposing a 2-4 year prison term for a positive drug test, "in light of the evidence showing [Appellant's] good faith albeit unsuccessful attempts to overcome his longtime addition." *Id.* According to Appellant, an extension of his term of probation or other probationary restrictions "would have been consistent with [] Pennsylvania law[.]" *Id.*

Appellant argues that incarceration is not warranted, as he has made "substantial efforts towards rehabilitation – including completing a substance abuse evaluation." *Id.* at 14. Appellant directs our attention to his employment as a prep cook and sous chef in New Jersey. *Id.* Appellant also has completed a drug and alcohol treatment program while incarcerated. *Id.* Appellant asserts he

> was honest with the [trial] court about the triggers that had led to his unfortunate though unintended relapse: he had a drink with an old friend, who later died from drug use himself. This poor choice to drink led to a relapse of drug (cocaine) usage for [Appellant]. [Appellant] expressed remorse to the judge and promised to strive not to repeat his behavior….

*Id.* at 15. Appellant points out his mother and wife were present in the courtroom, "showing family support." *Id.*

Appellant asserts his behavior does not suggest probable future offenses, since he was not convicted of an additional crime. *Id.* at 16. Additionally, Appellant contends there was no evidence confinement would

uphold the authority of the court. *Id.* Appellant points out his underlying convictions were for theft, burglary and trespass. *Id.* at 17. According to Appellant, "[n]othing in the record showed that there was a 'probability' of future offenses of those types." *Id.* Appellant argues his sentence is not commensurate with his violation of probation for a positive drug test. *Id.*

Our standard of review is well settled.

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment — a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Simmons*, 56 A.3d 1280, 1283-84 (Pa. Super. 2012) (citation omitted).

> In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.

*Commonwealth v. Colon*, 102 A.3d 1033, 1043 (Pa. Super. 2014) (citation omitted).

As this Court has stated, after revoking probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration. 42 Pa.C.S.A. § 9771(b).

> "[U]pon revocation [of probation] ... the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence." *Commonwealth v. Infante*, 63 A.3d 358, 365 (Pa. Super. 2013) (internal quotation

- 10 -

marks and citations omitted).  However, 42 Pa.C.S.A. § 9771(c) provides that once probation has been revoked, a sentence of total confinement may only be imposed if any of the following conditions exist:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S.A. § 9771(c).

"In addition, in all cases where the court resentences an offender following revocation of probation ... the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed[; f]ailure to comply with these provisions shall be grounds for vacating the sentence or resentence and resentencing the defendant." *Commonwealth v. Cartrette*, 83 A.3d 1030, 1040-1041 (Pa. Super. 2013) (internal quotations omitted); 42 Pa.C.S. § 9721(b).  "A trial court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender."  [*Commonwealth v.*] *Crump*, 995 A.2d [1280,] 1282-1283 [(Pa. Super. 2010)].

*Colon*, 102 A.3d at 1044.  This Court has held, "[t]echnical [probation] violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate [a resistance] to reform." *Commonwealth v. Carver*, 923 A.2d 495, 498 (Pa. Super. 2007).

Our review of the record discloses the trial court had the benefit of a PSI.  "[W]here the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all sentencing factors and considerations,

- 11 -

and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009).

At the resentencing hearing on September 28, 2023, Appellant's counsel explained,

> [Appellant's] violation, to which he admitted back in February[,] was that in approximately September and October of 2022, that he had submitted a positive urine test for cocaine, and that he additionally submitted dilute urine[ samples]….

N.T., 9/28/23, at 9. Counsel asserted that Appellant had served almost 10 months in prison for the positive cocaine test. ***Id.*** Counsel submitted to the trial court a report indicating Appellant did have negative drug tests, in addition to the positive test and "dilute urines." ***Id.***

Counsel also presented psychotherapy progress notes from Appellant's assessment and treatment program that spanned the summer and fall of 2022. ***Id.*** at 11. In the notes, the therapist opined Appellant was making progress and exhibited substantial efforts towards his treatment goals. ***Id.***

Appellant testified at the hearing that prior to his violation, he worked as a prep cook and sous chef for the Crystal Springs Mineral Spa and Resort in New Jersey. ***Id.*** at 13. He traveled 26 miles each way to work at the resort. ***Id.*** Appellant confirmed that he attended a drug and alcohol treatment program in the Monroe County Jail. ***Id.*** at 14. He completed that program in January 2023. ***Id.*** Appellant testified that upon release from

prison, he intends to seek drug treatment in a facility located 12 miles from his home. *Id.* at 15.

Appellant explained his most recent relapse. *Id.* at 16. Specifically, Appellant claimed he

> had a drink with an old friend that I've known for … almost 40 years, and God rest his soul, he passed away 3 months ago from … drug use, and if it's not enough to scare the … living daylights out of you, … I would never do that again.

*Id.*

On cross-examination, the Commonwealth reminded Appellant of his previous 34 arrests, 16 convictions and several probation violations. *Id.* at 17. Nevertheless, Appellant asserted he could "complete probation successfully." *Id.* Appellant testified regarding the support provided to him by his common-law wife of 30 years, his mother, his daughter, and his grandchildren. *Id.*

Appellant acknowledged his most recent probation violation took place after he had received treatment. *Id.* at 18. Nevertheless, Appellant asserted, he would not "risk losing my family like this ever again." *Id.*

Appellant's counsel asserted Appellant is "hardworking and he's diligent with respect to that." *Id.* at 19. The Commonwealth pointed out that Appellant's last employment "is only the second job he's ever had in his lifetime according to the PSI." *Id.*

At the close of the resentencing hearing, the trial court explained its reasons for imposing a sentence of total confinement:

So I'm going to look at this the way we're supposed to look at sentencing in Pennsylvania -- on an individual basis based on [Appellant's] history, which is right now our best indicator of future behavior, and also some of the objective facts that are in the old PSI report[,] … what I've heard[,] and what [Appellant] said [him]self. Considering all that, let me just say that the efforts that [Appellant] put in that [Appellant's] attorney highlighted, I think are very good and positive[. H]owever, … every single one of those documented efforts occurred before this most recent violation. That's one.

Number two, [Appellant's criminal] history shows that [his] rehabilitative prospects, although [Appellant] might be doing [better] on a relative basis [] than [he] had in the past, are not very good. … [T]here is nobody that could look at this record objectively and believe that another period of probation and community and county-level supervision is going to do either [Appellant] or society any good, and because of that, it's not going to do [Appellant's] family any good. It just hasn't worked time after time after time.

And so, just as in physical medicine, sometimes … taking only half your prescription for penicillin can be worse than not taking any; it's the same thing here. … [T]he worse thing we could do for [Appellant] and for our community and for [Appellant's] family is to undertreat [Appellant]. Everything that can be tried in New Jersey and other places … and the criminal and penal justice system and the tools they have to try to address [Appellant's] issues haven't worked at any of those states, so we're going to give the state [prison] system a try. There is the [STDP] the Commonwealth wants [Appellant] in….

N.T., 9/28/23, at 24-25. The trial court imposed an aggregate prison term of 2-4 years.

Appellant sought, and the trial court granted, reconsideration of his sentence. At the resentencing hearing on February 9, 2024, Appellant testified regarding his efforts at paying restitution for his underlying convictions. N.T., 2/9/24, at 14. Appellant pointed out that while on probation

for the 37 months prior to the underlying violation, he never missed a probation appointment. *Id.* at 15. Appellant described his family relationships giving him motivation to reform. *Id.* at 16. Appellant again detailed his efforts and asked for a county sentence. *Id.* at 20.

The trial court, however, relied on its prior reasons for imposing a sentence of total confinement. *Id.* at 23-26. The trial court vacated the prior resentencing order, and resentenced Appellant to 2-4 years in prison, but ordered that Appellant is eligible for the RRRI program. *Id.* at 36.

In its Pa.R.A.P. 1925 opinion, the trial court considered and rejected Appellant's claim of an excessive sentence:

> As [the court's] on-record statements over several hearings in this case show, after Appellant's second probation revocation[, the trial court] imposed an incarceration resentence based on and after consideration of Appellant's prior history; the PSI report; the facts and circumstances surrounding the underlying crime; Appellant's actions, conduct, behaviors, and attitude while on probation, including multiple probation violations; Appellant's rehabilitative prospects, including the fact that community-based supervision and treatment in his home state had been unsuccessful; public safety; the treatment records and reports presented during the revocation and resentencing proceedings; the arguments of counsel; and Appellant's statements[,] as well as those of his wife and mother.
>
> Of significance: Appellant travelled to Monroe County, an area in which he has no ties, to commit the subject crimes. He did so only four months after being released from jail for the same criminal conduct. Resolution of this case was delayed while Appellant was subsequently incarcerated in New Jersey. Ultimately, Appellant was offered and entered a favorable plea and sentence.
>
> At the time he pled guilty and was initially sentenced, Appellant was a recidivist, and, for sentencing purposes, a Repeat Felon. He

had amassed 34 adult arrests leading to 16 convictions[,] with several unreported or unknown dispositions. He had spent a significant portion of his adult life in jail. He had violated supervision in the past. Despite this record, Appellant was given a time-served sentence and probation so that he might, finally, address his criminogenic needs and addiction issues and also pay restitution.

Appellant did not take advantage of the opportunity given to him. He violated the rules of probation on multiple occasions, continued to use drugs, and rebelled against supervision. After his first revocation, Appellant was given another opportunity on probation with specific conditions tailored to his history and demonstrated needs. Yet, he violated again.

During the long wind-up to resentencing, Appellant initially indicated an understanding of the need for intensive long-term treatment – treatment that was long enough and strong enough to meet his individual[] needs – and asked for time in which to put together an alternative to incarceration that would provide both accountability and the proper measure of treatment. However, after an extended period, Appellant backed off that strategy, and ultimately asked [the trial court] to resentence him to probation[,] to be supervised by a department he claimed did not treat him properly[,] with community services that had not been successful in the past. The history of this case did not and does not support Appellant's fallback request.

Simply, despite his protestations to the contrary, [the trial court] did not resentence Appellant to incarceration merely because of a positive drug screen. (Appellant's Rule 1925(b) Statement, ¶ 2). Rather, [the trial court] took into consideration and based the resentence on all relevant facts, circumstance[s] and history, especially Appellant's multiple violations of probation while on supervision in this case, his rehabilitative needs, his recidivistic behaviors, his criminogenic needs, his low rehabilitative prospects in the community[,] where supervision and treatment had not been successful, and the applicable law. While Appellant was not convicted of a new crime while on probation, his history and conduct clearly indicated a likelihood that he would commit another crime if not imprisoned, and the sentence imposed was needed to vindicate the authority of the court.

> In short, the resentence [the trial court] imposed was supported by the facts, the law, and Appellant's history, conduct, behaviors, and multiple probation violations….

Trial Court Opinion, 5/7/24, at 11-13.

Upon review, we discern no abuse of the trial court's sentencing discretion in resentencing Appellant to total confinement, following Appellant's violation of probation. As such, Appellant's challenge to his sentence as excessive merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/6/2024